**BARBERTON** (city) v **MIKSCH, Exrx** et

Ohio Appeals, 9th Dist, Summit Co

No 2007.  Decided May 16, 1932

A. B. Casselberry, City Solicitor, Barberton, and Brouse, Englebeck, McDowell & Bierce, Akron, for plaintiff in error.

Rockwell, Grant, Thomas & Buckingham, Akron, and Ray B. Watters, Akron, for defendant in error.

WASHBURN, J.

The defendant, in its request to charge No. 1, requested the court to charge before argument that, even if water percolated from the reservoir onto plaintiff's land and damaged the same, no recovery could be had unless the defendant was negligent in not anticipating that water might so percolate from said reservoir and that the probable result of the storage of water in such reservoir would be to cause such percolation and consequent damage.

The court refused to so charge, and gave instead, plaintiff's request to charge No. 1, as follows:

"If you find by a preponderance of the evidence that the plaintiff's lands were suitable and available for farm purposes or for subdivision and sale in acreage tracts or other useful and valuable purposes before the establishment of the Barberton reservoir, and that the defendant by the damming up of Wolfe Creek and the impounding of water in its reservoir caused water to flow or ooze or percolate or seep from its reservoir through the substrata or subsoil of the land lying between plaintiff's lands and said reservoir into, onto or upon plaintiff's lands, thereby rendering the same or any part or parts thereof, sour, wet or swampy and permanently unfit and unsuitable for use as farm lands, or for subdivision and sale in acreage tracts, or for any other useful or valuable purpose for which you may find said lands to have been suitable and available before water was impounded in said reservoir, and that said dam and reservoir are permanent structures and that water will be impounded therein permanently, and that water therefrom has continued and will continue permanently to flow, or ooze or seep or percolate through the subsoil of the intervening lands into, onto or upon plaintiff's lands, so that, by reason thereof, plaintiff's lands, or any parts or portions thereof, have ever since the impounding of water in said reservoir been, and will be permanently sour, wet or swampy, and thereby rendered permanently unfit, unsuitable and unavailable for use as farm lands, or for subdivision and sale in acreage tracts, or for any other useful and valuable purpose for which you may find said lands to have been suitable and available before water was impounded in said reservoir, and that such was the necessary, natural, direct and proximate result of the establishment of said dam and reservoir and the impounding of water therein in 1926, I

charge you as a matter of law, that the same constitutes a trespass upon the lands described in plaintiff's petition, and the defendant is liable to the plaintiff in this action, without regard to whether or not the defendant used due care in the construction and maintenance of said dam and reservoir, and the impounding of water therein, and if you further find by a preponderance of the evidence, that as a direct and proximate result of said trespass, plaintiff's said lands at the time water was impounded in said reservoir by the defendant, were permanently injured or damaged by being permanently diminished or depreciated in value, plaintiff is entitled to recover in this action the difference between the fair and reasonable market value of said lands for the most valuable purpose or use for which they were suitable and available in the condition they were in immediately prior to said trespass and the fair and reasonable market value of said lands for such purpose in the condition they were immediately after said trespass."

The court's ruling on the aforementioned requests to charge, raises one of the important questions in this case.

If the defendant, by impounding water in said reservoir, caused water therefrom to percolate onto plaintiff's land and permanently damage it, does liability for such damage depend upon whether the defendant was guilty of any fault or negligence?

The defendant owned the real estate upon which said reservoir was located, and the impounding of water thereon was not a nuisance but a lawful use thereof, and the general rule is that one may make a lawful use of his property without being liable in damages for a temporary injury accidentally caused by such use, if due care is exercised in such use; but does the general rule apply where the injury is the direct result of a situation such as the jury might find from the evidence obtained in this case?

The damage did not result from any accident; there was no giving way of the dam or banks of the reservoir. If what is stated in plaintiff's request No. 1 (hereinbefore quoted) is true, the elevations and character of the soil were such that the damming up of the creek in effect forced the water upon plaintiff's land. If there had been a surface opening on the intervening land between the reservoir and plaintiff's land and the immediate and direct effect of the dam was to force the water upon plaintiff's land and permanently damage the same and virtually make it a part of the reservoir, there could be no doubt about the liability

248

of the defendant, regardless of the question of negligence; that would have constituted a trespass which would affect plaintiff's property rights in much the same way as a taking of his land for public purposes.

It seems to us that there is a distinction between a case where one is using his land for a lawful purpose and without injury to his neighbor's land, but upon the happening of an unexpected event, in connection with such use, injury is done his neighbor's land, and a case where the use of one's land for a lawful purpose, by reason of the surrounding conditions, directly and necessarily casts water upon his neighbor's land and injures it. In one case no injury would have resulted from what was done but for the happening of an event which may or may not be due to negligence, and in the other case the injury is the direct and necessary result of what was done, and constitutes a trespass upon the neighbor's land.

Where the injury to the neighbor's land is caused by an actual trespass which affects his pre-existing right of property, there is a liability although there is no want of care and skill on the part of those responsible for the trespass, and it is no defense to say that no trespass was intended and could not have been foreseen as a consequence of what was done; one is responsible for the consequences of a direct invasion of the premises of an adjacent land owner, irrespective of the question of negligence.

Placing something on the land of another or projecting anything into, over or upon the land, is a trespass, if what is done is a wrongful act committed with force. The force may be actual or implied; to commit a trespass upon my neighbor's land by casting water upon his land, it is not necessary for me to throw the water upon the land; I may so obstruct or divert a stream as to cause the water to run onto his land, or I may impound water in a reservoir where the soil is such that the water will percolate onto his land.

If water is cast upon the surface of adjacent land, it is certainly a trespass, and if water stored in a reservoir passes by percolation through intervening land to adjacent land, it is likewise a trespass upon the latter—a direct invasion of the same.

In the case of **Rhodes v City of Cleveland, 10 Ohio 159**, the court held that a municipal corporation, acting within the scope of its powers, was liable for cutting ditches and watercourses in such a manner as to cause the water to overflow and wash away plaintiff's land, and there was no claim made that the corporation was negligent.

The court evidently recognized the case as one of the invasion of the property itself; a trespass. That case is specifically approved in **City of Mansfield v Balliett, 65 Oh St 451**.

Our conclusion is that the petition alleged, and the evidence tended to prove, a continuing trespass, for which, if established, the defendant would be liable, although it did not intend to trespass and was not negligent, and therefore the trial court did not err in refusing to give defendant's request to charge No. 1, nor in giving plaintiff's request to charge No. 1.

It is urged, however, that the defendant was not liable because it was engaged in a governmental function.

In our judgment, the Ohio cases do not sustain that contention. On the contrary, we think that the defendant, in building and maintaining its reservoir, was acting in a proprietary capacity; but if it was exercising a governmental function, that would not protect it from liability if its trespass damaged the property in a way and to an extent which would virtually amount to a taking of plaintiff's property for public purposes. The state itself cannot take private property for public use without making compensation therefor, and consequently a municipality, while exercising a governmental function for the state, cannot do so.

It is a principal of the fundamental law of the state that the property of individuals cannot be taken for public use except upon the condition that just compensation be made therefor, and any statute conferring power, either governmental or proprietary, upon a municipal body, the exercise of which results in a trespass upon private property and consequent damage in the nature of an appropriation or destruction of such property by such body, is inoperative, and ineffectual to protect it from liability for the resultant damages, unless some adequate provision is contained in the statute for making such compensation.

Under the evidence and charge of the court in this case, the jury must have found that the defendant trespassed upon plaintiff's land by causing water to percolate or seep from its reservoir through the substrata or subsoil of intervening land into or onto plaintiff's lands and permanently diminished or depreciated the value of the same, and that in making and maintaining said improvement it was necessary to do so and that it will be necessary for the defendant to so trespass indefinitely; if that be true, then the damage to plaintiff's property was to some extent the same as if the property or a right connected therewith had

been taken for a public use, and we hold that he was entitled to compensation therefor regardless of whether the defendant acted in a governmental or proprietary capacity, or with or without negligence.

To deprive one of any valuable use of his land is to deprive him of the land pro tanto, and a destruction, in whole or in part, of the value of land, is in the nature of an appropriation, for which the constitution requires compensation to be made.

"5. It is not necessary that property should be absolutely **taken,** in the narrowest sense of that word, to bring the case within the protection of this constitutional provision. There may be such serious interruption to the common and necessary use of property as will be equivalent to a taking, within the meaning of the constitution.

"6. The backing of water so as to overflow the lands of an individual, or any other superinduced addition of water, earth, sand, or other material or artificial structure placed on land, if done under statutes authorizing it for the public benefit, is such a taking as by the constitutional provision demands compensation."

Pumpelly v Green Bay Co., 13 Wall. 166, 80 U. S. 557.

This somewhat rambling discussion of the two principal questions argued in this case is based upon the assumption that the jury was justified in finding that the use of said reservoir affected plaintiff's land in the manner and to the extent described in plaintiff's request to charge No. 1. That basic question of fact was bitterly contested at the trial, and it is urged that the finding of the jury is manifestly against the weight of the evidence.

At the request of the defendant, the court charged the jury before argument as follows:

"II. If the jury finds that the lands of the plaintiff are now in no different condition than such lands were before the building of the dam, and the impounding of water in the reservoir by the defendant, then the verdict of the jury must be for the defendant."

"III. If the jury finds that the condition of plaintiff's land is caused by overflow of water, from Viers Ditch, and the springy condition of the plaintiff's land, the springs having their origin in other causes than the reservoir of the defendant, the verdict of the jury must be for the defendant."

"IV. If the jury finds that the condition complained of by the plaintiff, upon plaintiff's land, is occasioned, not by water from the reservoir, but by reason of the neglect of the plaintiff to keep open a system of ditches upon the plaintiff's land, then the verdict must be for the defendant."

"V. If the jury finds that the plaintiff formerly used the system of ditches upon plaintiff's land, to drain the land of plaintiff, and that the neglect of the plaintiff to clean and to keep open this system of ditches, has caused the injury of which the plaintiff complains in the petition and the amendment to the petition, then the verdict of the jury must be for the defendant."

"VI. Before a verdict can be found for the plaintiff in this action, the jury must find, by a preponderance of the evidence, that water percolates, oozes and seeps from the dam of the defendant through intervening lands, to the lands of the plaintiff, and causes the conditions upon plaintiff's land as complained of in the petition and in the amendment to the petition."

"VII. The plaintiff in this case claims that water seeps, oozes or percolates from the reservoir of the defendant through the lands lying between the reservoir and plaintiff's lands, and continuing through lands of the plaintiff, causing plaintiff's lands to become wet, sour, unfit for cultivation and growing of crops, destroying pastures, and that said lands are rendered useless by reason of water so seeping, oozing or percolating through said lands and causing such condition upon plaintiff's lands. Before the jury can find in favor of the plaintiff in this cause, plaintiff must establish and prove by preponderance of the evidence that water from the defendant's reservoir seeped, oozed or percolated through such intervening lands and plaintiff's lands and actually saturated the lands of plaintiff with water, soured the soil, rendered it unfit for cultivation and growing of crops, destroying pasture lands and producing the condition or damage on plaintiff's lands complained of."

"VIII. If the jury find that water from the defendant's reservoir did not seep, ooze or percolate through the lands between the reservoir and plaintiff's lands, and through plaintiff's lands, causing plaintiff's lands to become wet, soured, unfit for cultivation, destroyed the pasture thereon and causing quantities of water to remain and drain over plaintiff's lands, and did not cause damage to plaintiff in the manner complained of by plaintiff, or if the jury find that said lands are not saturated with water from such seepage and that the soil has not become soured and unfit for cultivation, growing of crops, or that the pasture is not destroyed or that quantities of water by reason of seepage are not deposited on plaintiff's lands, or caused to flow over them,

your verdict must be for the defendant."

"IX. Plaintiff claims that the substrata. and subsoil of the land lying between defendant's reservoir and the lands of the plaintiff is and always has been of a porous nature and such as would permit water if stored in defendant's reservoir to a level higher than plaintiff's low land to percolate, ooze and seep through such land and especially by the great pressure of the water so stored in said reservoir, to percolate, ooze and seep through said lands to plaintiff's land.

"Before the jury can find for the plaintiff it must find by a preponderance of the evidence that the lands between the said reservoir and the land of plaintiff was of a porous nature and such as to admit of the water from said reservoir to ooze, percolate and seep through such lands and enter upon the lands of said plaintiff and cause the conditions complained of in said plaintiff's petition and amendment to the petition."

"X. Plaintiff claims among other claims that prior to September 1, 1926, all the lands of the plaintiff on said farm were dry lands and suitable for farm purposes and actually tilled and sown in crops, and valuable crops were produced thereon and on or about said date the defendant built a dam across the ravine east of plaintiff's premises and known as Wolf Creek ravine and on or about said date closed the gates of said dam and dammed and backed up the water in said ravine in large volumes and thereby caused said waters by reason of its elevation and great pressure and by reason of the porous nature of the strata and subsoil of plaintiff's lands and the land lying between the plaintiff's land and said reservoir to percolate, ooze, filtrate and seep through and into said subsoil and substrata, of said lands of plaintiff so that large volumes of water from said reservoir found its level on plaintiff's land and inundated and overflowed the low portions and fields of plaintiff's lands in numerous places, thereby rendering low portions and fields of plaintiff's farm totally unfit for use as farm land or for any other purpose, also rendering the remainder of plaintiff's said farm unpracticable to be used as farm lands, and partially or almost entirely worthless as such by reason of the impossibility of getting from the dry portion of fields thereof with wagons or other farm implements and tools without great inconvenience, loss and expense.

"Before the jury can find for the plaintiff in this case, the jury must find by a preponderance of the evidence that the water stored in defendant's reservoir percolates, oozes, filtrates and seeps through the substrata or subsoil of all of said lands and inundates and overflows the low portions and fields of plaintiff's farm and renders said low portions permanently unfit for use as farm land, or for any other purpose, and also renders the balance of plaintiff's farm impracticable to be used as farm land, or for any other purpose and almost entirely worthless as such."

There is nothing in the general charge or other requests to charge which were given, which is in any way inconsistent with the charges given and hereinbefore quoted, and it is apparent that the principal issue of fact in the case was fully and fairly presented to the jury and that the verdict was in accordance with their finding in reference thereto.

The record is too voluminous for us to enter into any discussion of the evidence; all that can be reasonably expected is that we state our conclusion, which is that the verdict and judgment are not manifestly against the weight of the evidence.

The record discloses that there were a large number of exceptions taken by the defendant to the rulings of the court on the admission of evidence, and many of such exceptions are referred to in the brief of defendant.

We find no prejudicial error in any of said rulings.

No complaint is made as to the measure of damages stated in the charge of the court, and in view of the very restricted basis of recovery which the court permitted the jury to consider, we do not think that any just complaint can be made of the charge on that subject.

There was evidence which tended to prove a continuing trespass, which had not a temporary but a permanent effect upon the land of plaintiff, and the court allowed recovery only in the event the jury found that such trespass rendered the land permanently unfit and unsuitable for use for certain purposes, and that said trespass would necessarily continue; thus the court denied recovery unless the jury found that the trespass caused a permanent damage which affected the value of the land, and the measure of damages was appropriate for such a case.

The action in the Common Pleas Court was not one to compel an appropriation under the statute and was not tried as such, and it was not an action to recover compensation and damages for land wrongfully taken and appropriated for public use and it was not tried as such; the petition alleged and the evidence tended to prove a trespass, and the action as it was tried and submitted to the jury was one to recover dam-

ages for a continuing injury, occasioned by a trespass which permanently impaired the value of the property; for such an injury the defendant was liable to Jerome Miksch, who began an action therefor; he having died during the pendency of that suit, the cause of action survived to the personal representative of his estate, and the action was properly revived in the name of the executrix of his estate. The damages assessed are not excessive for the injury which the jury might find under the evidence was caused by the continuing trespass of which complaint was made.

Judgment affirmed.

PARDEE, PJ, and FUNK, J, concur.