KROMER et al., Appellees,

v.

ISLAND RECREATION ASSOCIATION, INC., Appellant, et al.

[Cite as *Kromer v. Island Recreation Assn., Inc.* (1992), 82 Ohio App.3d 787.]

Court of Appeals of Ohio,
Warren County.

No. CA91–10–077.

Decided Sept. 21, 1992.

*Robert W. Peeler*, for appellees.

*Jack F. Grove*, for appellant.

---

JONES, Presiding Judge.

Defendant-appellant, Island Recreation Association, Inc., appeals a bench trial judgment granted to plaintiffs-appellees, Charles W. Kromer and Pamela Kromer, in appellees' trespass action against appellant.

In 1976, appellees purchased residential real estate in Landen, a controlled land use community whose amenities are privately owned and administered through various homeowners' associations, including appellant. Landen is built around Landen Lake and three retention ponds, an upper pond, a middle pond and a lower pond. Appellees' property is located on the upper pond and they paid a premium to obtain a homesite on the lake itself. As property owners, appellees are mandatory association members and their dues are used to fund the community's various amenities. At the time of trial, appellees had paid over $5,800 in dues to appellant and other associations. Appellant is responsible for maintenance and capital improvements with respect to the three ponds, a swimming pool, clubhouse, tennis courts and various common-ground areas.

The upper pond's water was supplied by natural runoff from the adjoining land. In addition, water was pumped to the upper pond from Landen Lake. The upper pond also received surface water from a nearby subdivision via a twenty-four-inch culvert installed in 1987. The upper pond's excess water drained over a spillway into the middle pond. The middle pond drained into the lower pond, which, in turn, drained into Landen Lake.

Beginning in 1981, appellant periodically turned off the pond pump for maintenance and other reasons. In 1987, the pump was permanently shut down as part of a cost reduction effort, at which time the ponds became stagnant and developed large amounts of algae. Appellees claim that by shutting down the pump, raising the level of the spillway and installing a culvert, appellant caused the upper pond to flood, resulting in erosion to appellees' property and that of appellees' neighbors.

In 1989, appellees filed an amended complaint against appellant and several other defendants alleging trespass and other causes of action. The trial court dismissed the complaint against all other defendants. Following a bench trial, the trial court issued a decision in which it rejected all of appellees' causes of action except their trespass claim. The court concluded that the upper pond's flooding constituted a trespass and awarded $2,000 in damages for the

interference with appellees' use of their property, and an additional $3,875 representing the cost of repair to preclude further trespass by flooding.

On appeal, appellant presents a single assignment of error, which reads as follows:

"The trial court erred in its conclusion that retention pond flooding constitutes an actionable trespass when such pond is part of an overall scheme of planned land use subject to restrictive covenants, and there was no evidence to show that the pond overflowed its banks."

Although appellant devotes a substantial portion of its brief to the discussion of balancing individual and collective or community rights within the context of a planned land use community setting, the case at bar can be reduced to the simple question, as reflected in the latter portion of the assignment of error, whether the trial court's finding that appellant committed a trespass on appellees' property is against the weight of the evidence.

An owner of real estate who alters the natural flow of water across his property so as to increase the volume and intensity of the flow onto adjoining property may be held liable in trespass to an injured landowner. See *DeTellem v. Sargent* (Apr. 6, 1983), Clermont App. No. 1071, unreported, 1983 WL 4318. The gist of the trespass is the unlawful or unprivileged entry onto the land of another. *Id.* Accordingly, one who obstructs or diverts a water source so as to cause the water to run onto neighboring land or who impounds water in a reservoir where the soil is such that the water percolates onto neighboring land has committed a trespass. *Barberton v. Miksch* (App.1932), 12 Ohio Law Abs. 245, affirmed (1934), 128 Ohio St. 169, 190 N.E. 387.

The trial court found that a trespass occurred as a result of the flooding that encroached upon appellees' property. According to appellees, the flooding was caused by a combination of factors: shutting down the pond pump, installing the culvert that allowed runoff from an adjoining subdivision, and raising the height of the spillway. Appellees also testified that when their property was flooded, the ground became soft and swampy and could be neither mowed nor used until it sufficiently dried. In addition, the receding floodwaters left debris and garbage on appellees' property.

The installation of the culvert was part of Landen's overall development plan and served no purpose other than to allow the natural drainage of water from an adjoining subdivision that was on higher ground. In view of the circumstances, such constitutes a reasonable use of the property. See *McGlashan v. Spade Rockledge Corp.* (1980), 62 Ohio St.2d 55, 16 O.O.3d 41, 402 N.E.2d 1196. There being no evidence that the culvert increased the flow

of water to the upper pond other than for natural drainage, the installation of the culvert does not support a cause of action in trespass.

The focus of appellees' trespass claim is their assertion that appellant caused the flooding by turning off the pond pump and raising the spillway height. The pump supplied water from Landen Lake to the upper pond. When the level of the upper pond reached the top of the spillway, the water poured over the spillway into the middle pond. When the pump was operating, the pond maintained a constant water level. According to appellees, after appellant shut down the pump, the water level in the pond would fall and rise, causing erosion and loss of appellees' property.

Appellees also argue that flooding occurred after appellant raised the spillway height. There was evidence that appellees' next-door neighbor lost a considerable portion of her property to erosion. Appellant conducted a pond bank reclamation and stabilization project with respect to the neighbor's property. During the course of the project, the lake was drained, at which time appellant repaired leaks at the base of the spillway. According to appellees, however, appellant used this opportunity to raise the height of the spillway. The increased height of the spillway allegedly caused the pond to flood its banks after a hard rain or other sudden and substantial increase in the water supply.

We fail to see how any flooding could be attributed to turning off the pump. Although the resulting loss of circulation could have contributed to the subsequent formation of large amounts of algae, such does not constitute an actionable trespass. To the contrary, a constant water supply to the pond in conjunction with the raised spillway would have caused the pond to constantly overflow its banks and inundate the surrounding area.

With respect to the spillway, appellees testified that appellant raised the spillway during the bank reclamation project. However, there was no evidence of the spillway's height at the time of its construction, before or after the reclamation project, or the time of trial. Appellant's representatives testified that corrective measures were taken to patch a leak in the spillway, but nothing was done to raise its height. Appellant installed concrete caps where the spillway's ends joined the pond banks. The caps did not raise the spillway height and were designed to funnel water onto the spillway and prevent erosion where the bank and spillway met.

A trial court's judgment supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as against the weight of the evidence. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273. An

appellate court not only has the power to review the weight of the evidence, but, if the case is a proper one and the question is properly raised, it also has the duty to do so. *In re Sekulich* (1981), 65 Ohio St.2d 13, 19 O.O.3d 192, 417 N.E.2d 1014.

Although we are normally reluctant to reverse a lower court's judgment on the weight of the evidence, especially where that judgment has been rendered in a bench trial, we nevertheless conclude that the finding that appellant committed a trespass is not supported by the evidence. The type of trespass involved in the case at bar can result from a defendant's intentional or negligent conduct. *Barberton, supra,* 12 Ohio Law Abs. at 248. However, we find neither this type of conduct by appellant nor a failure by appellant to perform some duty that would support a trespass. There is no evidence that appellant actually raised the spillway height or that by turning off the pump appellant caused the pond to overflow its banks. We therefore conclude that the record is insufficient to support the conclusion reached by the trial court. See *Cleveland Police Patrolmen's Assn. v. Voinovich* (1984), 15 Ohio App.3d 72, 15 OBR 101, 472 N.E.2d 759.

For the reasons set forth above, we conclude that the trial court's finding of a trespass is against the weight of the evidence. Appellant's assignment of error is well taken and sustained and the judgment of the trial court is accordingly reversed. Pursuant to App.R. 12(C), final judgment is hereby granted in favor of appellant.

*Judgment reversed.*

KOEHLER and WALSH, JJ., concur.