Michele Robinette Moran, Michael Moran, and the Estate of Frank Findo[1] ("the Morans") and James Bumen appeal the judgment of the Ross County Court of Common Pleas finding that they unreasonably interfered with the natural flow of surface waters on Emerson and Marguerite Mays' property. On a consolidated appeal, the Morans and Bumen argue that the trial court's judgment was against the manifest weight of the evidence. We disagree, because the record contains competent, credible evidence to support the factual findings of the trial court. The Morans and Bumen also assert that the trial court erred by failing to apportion damages between the defendants-appellants. We agree, because the Morans established that the harm suffered by the Mayses was divisible. Finally, the Morans individually contend that the trial court's judgment regarding their common easement with the Mayses was against the manifest weight of the evidence and an abuse of the court's discretion. We disagree, because the record contains competent, credible evidence to support the judgment of the trial court and the trial court acted within its discretion.
Accordingly, we affirm in part and reverse in part the decision of the trial court, and we remand this cause to the trial court for further proceedings consistent with this opinion.
 I.
In July 1995, the Mayses sued the Morans. The Mayses requested that the trial court order the Morans to: (1) remove dirt that was deflecting drainage water back onto the Mayses' land, (2) remove dirt from an easement and enjoin the Morans from erecting a gate across the easement, and (3) pay monetary damages. The Morans counterclaimed against the Mayses and filed a third party complaint against Bumen for contribution and indemnification. Bumen counterclaimed against the Mayses, asserting that the Mayses altered the natural flow of surface water, and requesting monetary damages. The Mayses amended their complaint to include Bumen as a defendant.
At trial, the testimony showed that each party owns adjoining parcels of real estate that lie along State Route 104 in Ross County. Each plot shares common boundaries and all lie on a one hundred-year flood plain.
The Mayses own two adjoining plots that lie generally north of Bumen's plot, and to the west and north of the Morans' plot. The Mayses' southernmost plot shares its southern border with Bumen's plot, and part of its eastern border with the Morans' plot. The Mayses' southern plot houses an aeration system for a mobile home park on their adjoining northern plot. Bumen's plot houses an industrial business for the fabrication of precast concrete building supplies. The Morans' plot supports a retail establishment, the Lion's Den.
The Mayses originally owned all of the plots, then sold two plots, one to Bumen and one to the Morans. The deed conveying the plot to the Morans also granted them, by a metes and bounds description, a nonexclusive twenty-five-foot right-of-way for use to and from the Mayses' property. The deed also reserved the use of the right-of-way for the Mayses for the purposes of going to and from the mobile home park.
Initially, the Mayses used the easement to service and repair the mobile home park. The Mayses and the residents of the mobile home park used another entrance to the mobile home park for general traffic in and out of the park. When the standard size of mobile homes increased, the Mayses began using the easement to install new mobile homes in the park. The Mayses planned to expand the mobile home park eventually to include the southern plot, which is partially occupied by the aeration system. To comply with Ohio laws regarding the width of access roads to and from the mobile home park, the Mayses intended to use a strip of their land adjacent to the easement to widen the access road by ten feet.
The Morans presented testimony that they asked the Mayses for permission to install a gate across the easement to prevent children from the mobile home park from trespassing and vandalizing their property. The Morans testified that the Mayses initially consented to the gate, then later withdrew their consent. The Mayses presented testimony that they never spoke with the Morans regarding the installation of a gate and never consented to such changes in the easement.
In 1991, Bumen laid gravel on his property to elevate the land above the natural flood plain to insure his concrete business operated on dry land. When completed, Bumen's property stood one foot higher than its original elevation. In 1994, Bumen built a six-foot concrete wall on the boundary between his property, the Morans' property, and the Mayses' property.
In 1994, the level of standing rain water accumulating on the Mayses' property increased dramatically. At the same time, the Mayses began to construct the aeration system. To prepare for its construction, the Mayses graded the land and removed the sod. The Mayses dumped approximately one inch of "fly ash" to absorb the water accumulating on the property. After the Mayses completed the aeration system, they dumped the dirt from construction around the aeration system to protect it from the accumulating water.
The Mayses do not have a permit for a drainage system, nor an easement across the Morans' or Bumen's property for a drainage ditch. To drain, the accumulating water either rises high enough to flow across Moran's property or sits until it eventually is absorbed into the ground. The accumulating water began collecting under the Mayses' mobile home park, causing the aeration system to overwork. As a result, the Mayses were required to replace three aeration pumps at a total cost of $900. Wayne Martin, a professional appraiser, opined that if the Mayses' property did not flood, it would be worth approximately $60,000. Due to the flooding, however, the value of the land dropped to approximately $5,000 to $10,000.
In 1995, the Morans built a dirt and gravel dyke on the Mays-Moran property line to prevent water flow off the Mayses' property from accumulating on their property. The Morans also regraded their parking lot in order to funnel water into a drain at the southwest corner of their property, partially on Bumen's property.
Eugene Hardman, an expert witness, opined that the Mayses' improvements to their property did not contribute to the water accumulation. Without the Morans' and Bumen's improvements to their properties, however, water on the Mayses' property drained to the southeast, across the Moran and Bumen tracts, and eventually emptied into a drainage ditch along State Route 104. Hardman concluded that by elevating their properties, the Morans and Bumen prevented water from draining from the Mayses' property unless the water rose to approximately two to three feet. Hardman opined that removing Bumen's wall would allow water to flow southeast to the highway drainage ditches. Alternatively, removing the Morans' dyke, while leaving Bumen's wall intact, would require the water to accumulate to a depth of one and one-half feet to two feet before it could flow across the Morans' parking lot into the highway drainage ditch.
The trial court found Moran and Bumen jointly liable to the Mayses, but found Bumen's wall primarily responsible for the Mayses' damages. Although the court recognized the utility of Bumen's goal of operating a concrete business, the court found Bumen's means to achieving his goal unreasonable. Additionally, the court noted that Bumen could have inexpensively prevented the water from accumulating on the Mayses' property by giving the Mayses' a right-of-way connecting their property to the drainage ditch. The water would then flow from the Mayses' property through a drainage line running across the Morans' property, across Bumen's property, and into the drainage ditch by State Route 104.
The court further found that the Morans' dyke aggravated the standing water on the Mayses' property. The Morans' dyke cut off any flow of water to the drainage pipe under Bumen's property and substantially raised the level of standing water on the Mayses' land when combined with Bumen's wall.
The court found Bumen primarily liable for the $50,000 diminution in the value of the Mayses' property. As an alternative to paying damages, the court ordered that within three months, Bumen could grant the Mayses a right-of-way across his land and along the existing drainage line to service the Mayses' land in heavy rains, with Bumen incurring the construction and related costs. The court ordered the Morans to cooperate with Bumen with respect to the right-of-way and to remove the dyke running between his land and the Mayses' property and to allow the natural flow of water. The trial court also found Bumen liable to the Mayses for a sum of $900 for the cost of repairing the aeration system.
With regard to the easement, the trial court found that the deed creating the easement did not contemplate a gate and that the Morans failed to produce convincing evidence of its necessity. The trial court found that the growth of the mobile home park contemplated by the Mayses was neither unanticipated nor unreasonable if the Mayses could comply with the all other laws and regulations with regard to trailer courts.
The Morans and Bumen appeal the judgment of the trial court. The Morans assert the following assignments of error for our review:
 I. THE TRIAL COURT'S DECISION WITH RESPECT TO DEFENDANTS/APPELLANTS MICHELE MORAN AND THE ESTATE OF FRANK FIDO WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONTRARY TO THE REASONABLE USE STANDARD.
 II. THE TRIAL COURT IMPROPERLY FAILED TO APPORTION THE DAMAGES BETWEEN THE DEFENDANTS.
 III. THE TRIAL COURT'S DECISION RELATING TO THE EASEMENT BETWEEN THE PROPERTY OF THE PLAINTIFFS/APPELLANTS MICHELE MORAN AND THE ESTATE OF FRANK FIDO WAS ASSIGNMENT (sic) MANIFEST WEIGHT OF THE EVIDENCE.
Bumen presents the following assignments of error:
 I. THE TRIAL COURT COMMITTED ERROR WHEN IT FOUND THAT BUMEN IS LIABLE TO MAYS EVEN THOUGH THE TRIAL COURT FOUND BUMEN'S USE OF HIS LAND TO BE REASONABLE UNDER THE REASONABLE USE RULE AND WHEN THE TRIAL COURT MADE NO FINDING THAT BUMEN'S INTERFERENCE WITH THE FLOW OF SURFACE WATER WAS UNREASONABLE.
 II. THE TRIAL COURT COMMITTED ERROR WHEN IT FAILED TO APPORTION DAMAGES BETWEEN BUMEN AND MORAN/FIDO.
As the Morans and Bumen raise the same issues in their first two assignments of error, we address their assignments together. We will then separately address the Morans' third assignment of error.
 II.
In their first assignment of error, the Morans and Bumer both argue that the trial court's judgment was against the manifest weight of the evidence because the Mayses failed to produce any evidence that the Morans and Bumen made unreasonable use of their land. The Morans and Bumen both assert that the evidence shows that the Mayses' improvements to their own land increased the accumulation of water on their property. The Mayses contend that they presented competent, credible evidence that the Morans' and Bumen's use of their land was unreasonable and that their own improvements did not cause the increased accumulation of the surface water on their land.
A reviewing court will reverse the factual findings of the trial court only if the findings are against the manifest weight of the evidence. See Seasons Coal Co. v. Cleveland
(1984), 10 Ohio St.3d 77, 80. Findings supported by some competent, credible evidence will not be reversed as being against the manifest weight of the evidence. Id.
With regard to interference with the flow of surface waters, the Ohio Supreme Court has held that:
 [a] possessor of land is not unqualifiedly privileged to deal with surface water as he pleases, nor is he absolutely prohibited from interfering with the natural flow of surface waters to the detriment of others. Each possessor is legally privileged to make a reasonable use of his land, even though the flow of surface waters is altered thereby and causes some harm to others. He incurs liability only when his harmful interference with the flow of surface water is unreasonable.
McGlashan v. Spade Rockledge Corp. (1980), 62 Ohio St.2d 55, syllabus, quoting Kinyon McClure, Interferences with Surface Waters (1940), 24 Minn.L.Rev. 891, 904. In determining the reasonableness of an interference, the trier of fact is to be guided by the rules stated in 4 Restatement of the Law 2d, Torts (1965) 108-142, Sections 822-831. McGlashan v. SpadeRockledge Corp. at 60.
To determine the reasonableness of an invasion, courts must balance the gravity of the harm caused by the interference against the utility interferer's conduct. 4 Restatement of the Law 2d, Torts (1965), 108-142, Sections 822-831. In particular, courts should balance the foreseeability of the damage to the adjacent landowner's property with the utility of the development of the land and the practicality of providing for adequate drainage before clearing and grading. Id. at 61. However, fundamentally, the unreasonableness of the invasion is a problem of relative values to be determined by the trier of fact in each case in the light of all the circumstances of that case. 4
 Restatement of the Law 2d, Torts (1965) 120, Section 826 Comment b.
 A.
In his first assignment of error, Bumen raises three issues. First, Bumen argues that the trial court applied the incorrect legal test to determine whether he interfered with the Mayses' surface water. Bumen next asserts that the trial court improperly found that he could have taken reasonable alternatives to alter his land. Finally, Bumen contends that he did not unreasonably interfere with the natural flow of the surface water.
 1.
Initially, Bumen argues that the trial court mischaracterized the water on the Mayses' property as "flowing surface water." Bumen asserts that the Mayses did not present any testimony that the water reached "some well-defined channel in which it is accustomed to and does flow," pursuant to the Ohio Supreme Court's definition of "surface water" in Crawford v. Rambo
(1886), 44 Ohio St. 279, 282. Therefore, Bumen argues that the court improperly applied the McGlashan reasonable use test regarding interference with surface water.
"Surface waters" are those waters that flow over ground, because of falling rains and melting snows that do not form a part of a water-course or lake. Crawford at 282; Warren v. JemoAssoc., Inc. (Dec. 1, 1982), Athens App. No. 1104, unreported, citing 4 Restatement of the Law 2d, Torts (1965) 199, Section 846. Rain water is surface water until it reaches "some well-defined channel in which it is accustomed to flow." Id.
Thus, water is no longer considered "surface water" when it enters a stream and becomes part of a watercourse.
Bumen misinterprets the Crawford definition of surface water. The Mayses, did not need to prove that the water on their property flowed into a "well-defined channel in which it is accustomed to and does flow" to meet the definition of flowing surface water. Furthermore, Bumen provides no case law or authority to show that the trial court should have applied a test for accumulating rain water other than the reasonable use test set forth in McGlashan. As such, we find that the trial court did not error in applying the reasonable use test as set forth in McGlashan.
We also find that the Mayses presented competent, credible evidence to show that the water accumulating on their property met the definition of "surface water." At trial, all parties consistently testified that the water accumulating on the Mayses' property resulted from rainfall. The water stood on the property until it reached a great enough depth to flow over the dyke constructed by the Morans. The accumulating water drained by flowing from the Mayses property and across the Morans' property, eventually flowing into a ditch along State Route 104. Thus, this competent, credible evidence supports the trial court's finding that the water on the Mayses' property was "flowing surface water."
 2.
Bumen next asserts that the trial court erred, as a ma of law, in finding that he could have found reasonable alternatives to alter his land that would not have resulted in harm to the Mayses' property.
"An intentional invasion of another's interest in the use and enjoyment of land is unreasonable if the harm is significant and it would be practicable for the actor to avoid the harm in whole or in part without undue hardship." 4 Restatement on the Law 2d, Torts (1965) 136, Section 830. The inquiry is whether the actor could effectively and profitably achieve his main objective so that the harm to others would be substantially reduced or eliminated. Id. If he could, then his failure to avoid the harm deprives his conduct of the utility it might have otherwise, and the interference is unreasonable as amatter of law. Id.
At trial, Mr. Mays testified that he did not have a right-of-way across the Morans' or Bumen's property to install a pipe to drain the accumulating surface water into a ditch along the highway. The accumulating water dropped the value of the Mayses' property by $50,000, from an estimated $60,000 value without flooding to $5,000-$10,000 with flooding. Considering the property values estimated in this testimony, a grant of a right-of-way from the Mayses' property to the drainage line close to the corner of the Mayses' property and running across Bumen's property to the roadway would have cost less than the $50,000 loss in value to the Mayses' property. Therefore, we find that competent, credible evidence supports the trial court's finding that Bumen's use of the land was unreasonable because he failed to take reasonable alternative steps to avoid harm to the Mayses' property.
 3.
Finally, Bumen argues that the Mayses did not present any evidence that he unreasonably interfered with the natural flow of surface water. As stated supra, the Mayses presented expert testimony that Bumen's raising of the land and the construction of the wall restricted the surface water from flowing in its natural pattern from north to southeast. Bumen's wall caused rain water to stand two to three feet deep on the Mayses' land. Furthermore, Bumen could have avoided interfering with the natural flow of the surface water by granting the Mayses a right-of-way and providing access to his drainage line. Therefore, we find competent, credible evidence to support the trial court's finding that Bumen's interference with the surface water was unreasonable.
 B.
The Morans argue that the trial court's judgment was against the manifest weight of the evidence. Specifically, the Morans assert that under the McGlashan rule, their construction of the dyke was a reasonable response to the flooding they experienced from Bumen's wall and the interference caused by the Mayses' improvements to their land.
The Mayses presented expert testimony that the Morans' dyke added one to two feet of standing water to the flooding caused by Bumen's wall regardless of whether the Morans improved and regraded their aeration system. The physical integrity of the Morans' business, the Lion's Den, was never threatened by the increased water flow Bumen's wall created across their property. The increased accumulation of water greatly decreased the value of the real estate and interfered with the Mayses ability to use the land. The accumulated water damaged the mobile home park and threatened the homes and property of the residents. Therefore, we find competent, credible evidence to support the trial court's finding that the Morans' interference with the surface water on the Mayses' property was unreasonable.
Accordingly, we overrule the Morans' and Bumen's first assignments of error.
 III.
In their second assignment of error, the Morans and Bumen argue that the trial court erred in failing to apportion the joint damages between them. The Mayses argue that the issue of apportionment is an issue of contribution between the Morans and Bumen that does not affect their joint liability to the Mayses.
Damages among two or more causes must be apportioned where there is a reasonable basis for determining contribution of each cause to a single harm. Pang v. Minch (1990), 53 Ohio St.3d 196, quoting 2 Restatement of the Law 2d, Torts (1965) 444, Section 433(A)(1)(b). However, "where two or more causes combine to produce such a single result, incapable of division on any logical or reasonable basis, and each is a substantial factor in bringing about the harm, the courts have refused to make an arbitrary apportionment for its own sake, and each of the causes is charged with responsibility for the entire harm."Nichols v. Hanzel (1996), 110 Ohio App.3d 591, 603, quoting 2 Restatement of the Law 2d, Torts (1965) 440, Section 433A, Comment I; see, also, Pang v. Minch, 53 Ohio St.3d at 196-197.
The plaintiff bears the burden of showing the harm he suffered is indivisible. Pang v. Minch, 53 Ohio St.3d at 197. Once the plaintiff produces evidence that the conduct of each defendant was a substantial factor in producing a single injury, a prima facie evidentiary foundation has been established supporting joint and several judgments against the defendants. Id. Thereafter, the burden shifts to the defendants to show that the harm produced by their separate tortious acts is capable of apportionment. Id.
Apportionment applies to contribution among the various tortfeasors and not to an individual joint tortfeasor's liability to the plaintiff. Shoemaker v. Crawford (1991),78 Ohio App.3d 53, 54. If the defendants fail to establish that the harm suffered by the plaintiff is divisible, the plaintiff satisfies the judgment against the defendants for the entire amount. Id. Whether the harm suffered by the plaintiff may be apportioned is a question of law for the court. Pang v. Minch,53 Ohio St.3d at 196, fn. 4, citing 2 Restatement of the Law 2d, Torts (1965), Section 434(1)(b). However, once divisibility is established, the apportionment of the damages among defendants is a question of fact. See Id.
A reviewing court will reverse the factual findings of the trial court only if the findings are against the manifest weight of the evidence. See Seasons Coal Co. v. Cleveland,10 Ohio St.3d at 80. Findings supported by some competent, credible evidence will not be reversed as being against the manifest weight of the evidence. Id.
Here, the Mayses presented the testimony of Hardman who opined that the Morans' and Bumen's improvements to their land prevented surface water from draining off the Mayses' property. Hardman concluded that the removal of either the Morans' dyke or Bumen's wall would aid in the drainage of the Mayses' property. Thus, the Mayses fulfilled their burden of establishing that the conduct of the Morans and Bumen was a substantial factor in producing the flooding on the Mayses' property.
On cross-examination, Hardman concluded that while the Morans' dyke and Bumen's wall caused the flooding on the Mayses' property, Bumen's wall was primarily responsible. Hardman opined that the removal of Bumen's wall would allow the water to drain from the Mayses' property without impediment. If Bumen's wall remained and the Morans removed their dyke, water would drain from the Mayses' property after accumulating to a depth of one to two feet. We find, therefore, that the Morans presented evidence to show that Bumen was substantially responsible for the harm incurred by the Mayses. Therefore, we find, as a matter of law, that the Morans fulfilled their burden of showing that the harm suffered by the Mayses was apportionable.
The trial court correctly found that the harm suffered by the Mayses was apportionable by finding Bumen primarily liable. However, the trial court failed to make the factual finding as to how to apportion damages among the Morans and Bumen. Therefore, we sustain the Morans' and Bumen's second assignments of error and remand this cause to the trial court to determine the apportionment of damages among the Morans and Bumen.
 IV.
In their third assignment of error, the Morans assert that the trial court abused its discretion by enjoining them from building a fence across an easement held by the Mayses. The Morans also assert that the Mayses' future plans to expand their mobile home park will overburden the easement and was not contemplated by the original agreement granting the easement. Therefore, the Morans contend that the Mayses conduct extinguished their interest in the easement.
The Mayses assert that the trial court correctly enjoined the Morans from erecting a gate across the easement because the gate would unreasonably interfere with the Mayses' use of the right-of-way. The Mayses also assert that the Morans do not have standing to raise the issue of overburdening and, therefore, that this court does not have jurisdiction to hear the case.
An easement is an interest in the land of another, created by prescription or express or implied grant, that entitles the owner of the easement, the dominant estate, to a limited use of the land in which the interest exists, the servient estate.Alban v. R.K. Co. (1968), 15 Ohio St.2d 229, 231; Yeager v.Tuning (1908), 79 Ohio St. 121, 124. An easement, although imposed on corporeal property, carries no corporeal interest in or right to the land. Lasiewski v. Landen Farm Comm. Serv.Assoc., Inc. (June 8, 1992), Warren App. No. CA91-12-095, unreported, citing Warren v. Brenner (1950), 89 Ohio App. 188,192. Thus, an easement implies a fee in another, and it follows that it is a right, by reason of such ownership, to use the land for a special purpose and one not inconsistent with the general property in the land of the owner of the fee. Id.
When an easement is created by an express grant, the extent and limitations of the easement depend upon the language of the grant. Alban at 232; Columbia Gas Transm. Corp. v. Bennett
(1990), 71 Ohio App.3d 307, 318. Thus, the owner of the servient estate may use the land for any purpose that does not interfere with the easement. Absent language in the deed or in the circumstances surrounding its creation or use, the servient estate owner may put gates or bars across it unless they would unreasonably interfere with its use. Gibbons v. Ebding (1904),70 Ohio St. 298, paragraph two of the syllabus.
A party to an easement may invoke the equitable jurisdiction of a court by seeking an injunction to enforce his or her rights pursuant to the easement. Murray v. Lyon (1994), 95 Ohio App.3d 215,221. Once a party invokes the trial court's equitable jurisdiction, the court possesses discretionary authority to weigh the parties' competing interests and exact an equitable division of their property rights. Id. citing OhioPower Co. v. Bauer (1989), 60 Ohio App.3d 57, 59-60. A determination rendered pursuant to the court's equity jurisdiction will not be reversed absent an abuse of discretion. Southers v. Rapp (Mar. 4, 1998), Ross App. No. 97CA2296, unreported. A finding that a trial court abused its discretion implies that the court acted unreasonably, arbitrarily, or unconscionably. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, a reviewing court may not substitute its judgment for that of the trial court. Berk v. Matthews (1990), 53 Ohio St.3d 161,169.
 A.
The Morans first assert that the court abused its discretion by enjoining them from erecting a gate across the easement because the Morans presented competent, credible evidence that the Mayses consented to the gate. The Mayses argue that the gate would unreasonably interfere with their ability to use the easement as a right-of-way.
To form a valid, binding agreement, the minds of the parties must meet and one party must make an offer and the other party accept the offer. Noroski v. Fallet (1982), 2 Ohio St.3d 77,79. As stated supra, we will not reverse factual findings of the trial court as being against the manifest weight of the evidence if the findings are supported by some competent, credible evidence. See Seasons Coal Co. v. Cleveland, 10 Ohio St. 3
d at 80.
The record contains conflicting testimony whether Mr. Mays agreed that Moran could place a gate across the easement. Moran testified that Mr. Mays agreed to allow him to build the gate, but later withdrew his consent. Mr. Mays testified that he did not remember talking to Moran about the gate and that he never gave Moran permission to build the gate. The trial court, as the trier or fact can judge the credibility of witnesses, and here determined that Mr. Mays' testimony was more credible than Moran's testimony. Thus, the record contains competent, credible evidence to support the finding of the trial court.
Furthermore, we find that the trial court did not abuse its discretion by enjoining the Morans from erecting a fence across the easement. The Mayses' express easement grants them a right-of-way for ingress and egress to the mobile home park. A gate across the easement would interfere with the Mayses' use of the right-of-way. Moreover, a gate across the easement would not ensure that children would not cross onto the Morans' property. Therefore, we find that the court adequately weighed the Morans' and Mayses' property rights and exacted an equitable solution by enjoining the Morans from erecting a gate across the easement.
Consequently, we find no merit to the Morans' first argument.
 B.
The Morans also assert that the Mayses extinguished their interest in the easement by overburdening the right-of-way and by using it in ways not contemplated by the parties at the time of the creation of the easement. The Mayses assert that the Morans cannot prove an injury in fact because a non-exclusive easement does not confer any interest in the underlying fee. Because the Mayses' argument raises a jurisdictional issue, we will first address their argument regarding the Morans' standing.
A party has standing to raise an issue when they can demonstrate that the challenged action caused them (1) injury in fact and (2) that the interest asserted is within the scope of the interest protected by the law. State ex. rel. DaytonNewspapers, Inc. v. Phillips (1976), 46 Ohio St.2d 457, 459.
As stated supra, an easement, although imposed on corporeal property, carries no corporeal interest or right to the land.Lasiewski v. Landen Farm Comm. Serv. Assoc., supra. InLasiewski, the appellant had a non-exclusive right-of-way across the appellee's land. After appellee subdivided his property, appellant sought to terminate the easement on the grounds that the appellee overburdened the right-of-way. The Twelfth District Court of Appeals held that the appellant did not have standing to raise the issue of overburdening because the non-exclusive easement gave the appellant no interest in the underlying real estate, and thus, no injury in fact.
Here, like Lasiewski, the Mayses own the underlying property, or fee, across which the non-exclusive easement lies. The Morans, therefore, have no corporeal interest in the estate of land upon which the easement runs, and therefore cannot assert an injury in fact. As such, we find that the Morans do not have standing to raise this issue.[2]
Accordingly, we overrule the Morans' third assignment of error.
 V.
In conclusion, we find that the trial court's judgment that the Morans and Bumen unreasonably interfered with the natural flow of surface water is supported by competent, credible evidence. We also find that the trial court erred by failing to apportion damages among the Morans and Bumen. Finally, we find that the trial court's judgment regarding the easement is supported by competent, credible evidence and within the bounds of the trial court's discretion.
Accordingly, we affirm in part, and reverse in part the decision of the trial court, and we remand this cause to the trial court for further proceedings consistent with this opinion.
JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND CAUSEREMANDED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED IN PART AND REVERSED IN PART and the cause remanded to the trial court for further proceedings consistent with this opinion and that costs herein be taxed equally between the parties.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Ross County Court of Common Pleas to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as the date of this Entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.
Abele, J. and Harsha, J.: Concur in Judgment and Opinion.
For the Court
 BY: _________________ Roger-L. Kline Presiding Judge
 NOTICE TO COUNSEL Pursuant to Local Rule No. 14, this document constitutes afinal judgment entry and the time period for further appealcommences from the date of filing with the clerk.
[1] Frank Findo died during the pendency of this case. All parties agreed to substitute his estate as a party.
[2] Even if the Morans had standing with regard to this issue, we would still find that the trial court's judgment that the Mayses did not overburden the easement is supported by competent, credible evidence. The Morans argue that the Mayses plan to overburden the easement because the Mayses' cannot comply with the width requirements for two-way access roads to mobile home parks as mandated by Section 3701-27-09, Ohio Adm. Code 3701-27-09.
Section 3701-27-09(C)(1), Ohio Adm. Code requires that all entrance and exit "two-way" streets have a minimum width of thirty-five feet exclusive of any median strip. While the Morans correctly assert that Section 3701-27-09, Ohio Adm. Code requires mobile home parks to have a minimum thirty-five foot two-way exit and entrance and the Mayses have a twenty-five-foot right-of-way, the testimony shows that the Mayses can comply with the law and the provisions of the easement. The Mayses presented evidence that their property joins the twenty-five-foot right-of-way and that they planned to use their property to expand the width of the access road by ten feet.
The Morans also contend that the use of the easement for ingress and egress to the expanded mobile home park is an unreasonable use not contemplated by either party at the time of its creation. The record shows that the Mayses planned to expand the mobile home court before granting the plot of land to the Morans and reserving the easement. Mr. Mays testified that he had planned to expand the mobile home park from the time he purchased the property. Mr. Mays retained the easement for additional access to the mobile home park, for deliveries and the transportation of new mobile homes. The Morans rented the property from the Mayses prior to purchasing it, giving them notice of the Mayses' use of the right-of-way. Mr. Mays' reservation of the easement on the Moran property supports his assertion that he contemplated expanding the mobile home park when he granted the Morans the property and the easement. As such, we find competent, credible evidence to support the trial court's finding that the Mayses' use of the easement is reasonable.