MCGLASHAN ET AL., APPELLEES, *v.* SPADE ROCKLEDGE
TERRACE CONDO DEVELOPMENT CORP., APPELLANT, ET AL.

[Cite as McGlashan v. Spade Rockledge Corp. (1980),
62 Ohio St. 2d 55 .]

(No. 79-779—Decided April 9, 1980.)

*Mr. Richard B. Kay,* for appellees.

*Messrs. Weston, Hurd, Fallon, Paisley & Howley, Mr. Patrick J. Murphy* and *Mr. Roger Van Deusen,* for appellant.

SWEENEY, J.   The Court of Appeals determined that the trial court had committed reversible error in both its charge to the jury and in its refusal to allow appellees to cross-examine appellant's engineer regarding compliance with a local land planning ordinance.

The disputed jury instructions concern an upper landowner's rights and obligations with respect to the flow of diffused surface water. In resolving this controversy, it is appropriate that we first review the development of the law regarding surface water rights.

Historically, American courts have adopted two diametrically opposed doctrines to resolve disputes in this area. One group espouses the common-enemy doctrine, which gives a landowner the unqualified right to dispose of surface water as he sees fit without regard to the consequences to adjacent landowners. Contrarily, the civil-law rule, applied in other jurisdictions, requires the lower landowner to accept the natural flow of surface water but prevents the upper landowner from doing anything to change the natural drainage and thus increase the burden on the lower landowner. It should be readily observed that strict application of either rule would work injustice in some cases and effectively stifle land development in others. Therefore, courts have adopted modifications and exceptions to both doctrines, so that often similar results are reached, regardless of which rule is applied.

In Ohio, the civil-law rule was first enunciated in *Butler* v. *Peck* (1865), 16 Ohio St. 334, where the court stated, at pages 342-343, that "where two parcels of land, belonging to different owners, lie adjacent to each other, and one parcel lies

lower than the other, the lower one owes a *servitude* to the upper, to receive the water which *naturally* runs from it, provided the industry of man has not been used *to create the servitude*." (Emphasis *sic.*) While courts in this state continued to cite this opinion as controlling, modifications to the strict civil-law rule began to appear, whenever necessary to produce an equitable result.

Recognizing the inhibiting effect that strict application of this rule would have on land use, the court in *Mason* v. *Commrs. of Fulton County* (1909), 80 Ohio St. 151, created an early qualification. While an upper landowner could not divert surface water onto a neighbor's property where it would otherwise not flow, the court held, at pages 159-160, that he could "drain the water from***[his land] into its natural outlet, whether that be a watercourse or a natural drainage channel, and thus *increase the volume and accelerate the flow* of water of such watercourse or channel, without incurring liability for damages to owners of lower lands." (Emphasis added.)[1]

The foregoing modification was reiterated in *Munn* v. *Horvitz Co.* (1964), 175 Ohio St. 521, paragraph one of the syllabus. Therein, the court reasoned, at page 528, that "[s]uch a rule imposes no undue burden on a lower-property owner, who must be held to expect, when he acquires lands through which a natural watercourse flows, that the dominant landowners will develop their lands to their most beneficial uses and, in the promotion of those uses, will collect surface water and accelerate the flow thereof into its natural watercourses." (However, this court notes that appellees could hardly have anticipated that the land above their premises would be so developed as to create the potential for a mudslide.)

While *Munn* re-applied the modified civil-law doctrine, it did not address the validity of a totally different rule, which had been used to resolve surface water disputes in urban settings. Known as the modified common-enemy doctrine, this rule was applied in *Lunsford* v. *Stewart* (1953), 95 Ohio App.

---

[1] Confusion has arisen concerning the meaning of "a watercourse or a natural drainage channel," as used in *Mason, supra.* On the one hand, it has been limited to waterways in the riparian sense; yet, another court has extended it to allow drainage into any natural depression. Compare *Bey* v. *Wright Place, Inc.* (1956), 108 Ohio App. 10, with *McCoy* v. *Rankin* (1941), 35 Ohio Law Abs. 621.

383, to allow a lower landowner to divert the natural flow of surface water by raising the level of his property and erecting structures thereon. As long as he proceeded in a reasonable manner, the lower landowner would not be liable for damages when the water backed up onto another's property. See, also, *Springfield* v. *Spence* (1883), 39 Ohio St. 665. Also left unanswered by *Munn* is a question presented herein, *i.e.,* whether an upper landowner can increase the volume and accelerate the flow of surface water onto another's property without first draining it into a natural watercourse.

As is apparent from the foregoing, the present state of the law in Ohio regarding surface water rights is decidedly unclear. In this respect we are not alone. Courts in other states have also experienced difficulty in applying these inflexible doctrines to varying circumstances. The result has been a trend toward adoption of a *reasonable-use* approach based on tort liability rather than property rights. Forty years ago, a landmark article on this subject succinctly posed the dilemma and proposed the following solution:

"'* * *' The question presented in such cases is not so much one of law as of fact. It would doubtless be convenient if it could always be answered by citing a stereotyped definition of legal right. But as the situation of all adjoining owners of land is not the same, and as the circumstances attending the use of land in view of the flow of surface water are infinitely various, the failure to attain substantial justice by the enforcement in all cases of a rule of law which does not recognize these important differences is not surprising. The result is that the question of the reasonableness of the use in a given case must be determined as a question of fact under all the attendant circumstances.' " [2]

When Kinyon & McClure's article was published, only New Hampshire and Minnesota were using a reasonable-use standard to resolve surface water conflicts. However, since then numerous other courts[3] have heeded the article's advice

---

[2] Kinyon & McClure, Interferences with Surface Waters, 24 Minn. L. Rev. 891, 907-908 (1940). See, also, Note, Ohio Surface Water Rights, 38 Cinn. L. Rev. 525 (1969), which encourages this court to adopt a reasonable-use rule.

[3] The following jurisdictions have espoused some form of the reasonable-use rule: *Weinberg* v. *Northern Alaska Development Corp.* (Alaska 1963), 384 P. 2d 450; *Keys* v.

to replace the arbitrary civil-law and common-enemy doctrines, with their attendant modifications and exceptions, with "a flexible rule like the rule of reasonableness, which merely lays down a general objective and a list of factors to be considered in determining whether or not that objective has been attained in any given case."[4]

The basic issue in these controversies is normally whether liability for the damage resulting from an interference with surface water flow should be borne by the person causing it. In this regard, an analysis centering on the reasonableness of a defendant's conduct, in view of all the circumstances, is more likely to produce an equitable result than one based on arbitrary property concepts. It is true that the law should not inhibit reasonable land development, but neither should it allow a landowner to expel surface water without regard to the consequences. As eloquently stated by Justice Brennan in *Armstrong* v. *Francis Corp.* (1956), 20 N.J. 320, 330, 120 A. 2d 4, "no reason suggests itself why, in justice, the economic costs incident to the expulsion of surface waters in the transformation of the rural or semi-rural areas of our State into urban or suburban communities should be borne in every case by adjoining landowners rather than by those who engage in such projects for profit. Social progress and the common wellbeing are in actuality better served by a just and right balancing of the competing interests according to the general principles of fairness and common sense which attend the application of the rule of reason."

A reasonableness analysis appears in 4 Restatement on Torts 2d 146, Section 833, which provides that "[a]n invasion of one's interest in the use and enjoyment of land resulting from another's interference with the flow of surface water may constitute a nuisance under the rules stated in §§ 821A-831." These latter rules basically determine the

*Romley* (1966), 64 Cal. 2d 396, 412 P. 2d 529; *Rodrigues* v. *State* (1970), 52 Hawaii 156, 472 P. 2d 509; *Klutey* v. *Commonwealth Dept. of Highways* (Ky. 1968), 428 S.W. 2d 766; *Whitman* v. *Forney* (1943), 181 Md. 652, 31 A. 2d 630; *Pendergrast* v. *Aiken* (1977), 293 N.C. 201, 236 S.E. 2d 787; *Jones* v. *Boeing Co.* (N.D. 1967), 153 N.W. 2d 897; *Armstrong* v. *Francis Corp.* (1956), 20 N.J. 320, 120 A. 2d 4; *Houston* v. *Renault, Inc.* (Tex. 1968), 431 S.W. 2d 322; *Sanford* v. *University of Utah* (1971), 26 Utah 2d 285, 488 P. 2d 741; and *State* v. *Deetz* (1974), 66 Wis. 2d 1, 224 N.W. 2d 407.

[4] Kinyon & McClure, *supra,* at page 935.

reasonableness of the invasion by balancing the gravity of the harm caused by the interference against the utility of the interferor's conduct.

Since we believe such an analysis is more likely to provide both flexibility and certainty than any of the property-based doctrines, this court therefore adopts a reasonable-use rule, to be used in resolving surface water controversies, which may be expressed as follows:

"***[A] possessor of land is not unqualifiedly privileged to deal with surface water as he pleases, nor is he absolutely prohibited from interfering with the natural flow of surface waters to the detriment of others. Each possessor is legally privileged to make a reasonable use of his land, even though the flow of surface waters is altered thereby and causes some harm to others. He incurs liability only when his harmful interference with the flow of surface water is unreasonable."[5] In determining the reasonableness of an interference, the trier of fact is to be guided by the rules stated in 4 Restatement on Torts 2d 108-142, Sections 822-831.[6]

The disputed jury instructions herein do not comport with the foregoing rule. The term "reasonable-use" is mentioned in the instructions, but only in reference to an upper landowner's right to grade and level his property, and thereby increase the volume and accelerate the flow of surface water. Nowhere was the jury instructed as to the central question of fact, *i.e.,* did appellant act reasonably, under all the circumstances, in clearing and grading its property without *first* installing some method of drainage. Furthermore, the crucial error occurred in the final charge on this subject, and in the only instance that appellant was mentioned by name, when the judge stated that, "[i]f Spade Rockledge, by clearing and grading its land, did no more than increase the volume and accelerate the flow of surface water upon plaintiffs' properties, then Spade Rockledge is not liable to plaintiffs for whatever damages they may have sustained." It is obvious that the preceding charge is a restate-

---

[5] *Id.,* at page 904.

[6] The reasonable-use approach and 4 Restatement on Torts 2d 108-142, Sections 822-831, were previously applied in this state in *Chudzinski* v. *Sylvania* (1976), 53 Ohio App. 2d 151. See, also, *Myotte* v. *Mayfield* (1977), 54 Ohio App. 2d 97.

ment of the modified civil-law rule, which cannot be sustained under the approach we now adopt.

Appellant's contention that the "two-issue" rule applies, so as to make any error in the instructions harmless, is not well taken. Spade Rockledge argues that the jury is presumed to have concluded that an "Act of God" caused the damages to appellees' properties. However, as stated in *Piqua* v. *Morris* (1918), 98 Ohio St. 42, paragraph one of the syllabus, "***[t]he fact that some other cause concurred with the negligence of a defendant in producing an injury, does not relieve him from liability unless it is shown such other cause would have produced the injury independently of defendant's negligence." Because of the error in the charge, this court cannot determine, as a matter of law, that the jury found an "Act of God" to be the independent cause of the damages.

Therefore, this cause must be remanded for a new trial on the issue of the reasonableness of appellant's conduct, and on the issue of causation.[7] In determining the reasonableness of appellant's conduct, the trier of fact is to be guided by the rules in 4 Restatement on Torts 2d 108-142, Sections 822-831. In particular, the foreseeability of the mudslides and flooding, as well as the gravity of the harm, should be weighed against the utility of appellant's development and the practicality of providing for adequate drainage prior to clearing and grading.

The Court of Appeals also found reversible error in the trial court's refusal to permit cross-examination of appellant's engineer regarding compliance with Broadview Heights Ordinance 16-63. We disagree. Appellees wished to use this land planning ordinance to establish a standard of care imposed upon Spade Rockledge. The record indicates that city officials were extensively questioned by appellees' counsel concerning the applicability of the ordinance to appellant's development. Additionally, a representative of Spade Rockledge admitted that the ordinance was not complied with. When appellees' counsel asked the Spade Rockledge engineer whether he had knowledge of the requirements of the ordinance, appellant ob-

---

[7] Appellant's assertion that appellees did not properly preserve their objection to the disputed charge is not well taken. Not only did they object to the giving of that charge, but they also had previously requested a different charge on surface water rights more favorable to their position.

62

jected. The trial court correctly sustained this objection. Appellees had laid no foundation to show that, in his position as engineer, this witness had any responsibility to comply with that ordinance. Thus, no reversible error arose from this ruling.

For the foregoing reasons, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, C. J., HERBERT, W. BROWN, P. BROWN, LOCHER and HOLMES, JJ., concur.