OPINION {¶ 1} Mary and Chester Hughes appeal from the grant of summary judgment by the Trumbull County Court of Common Pleas to Mill Creek Enterprises, Inc., and Mill Creek Properties, Ltd., on their action for trespass and personal injuries resulting from an alleged diversion of natural surface water flow. We affirm in part, reverse in part, and remand this matter.
 {¶ 2} Since 1991, Mr. and Mrs. Hughes have owned a house located at 424 Niles-Cortland Road (State Route 46), in Howland Township, Trumbull County, Ohio. They used the house, which is located on the west side of the road, at an elevation below the road grade, both as a residence and business location. In the summer of 1999, Mill Creek Enterprises, Inc., acquired one or more residential properties on the east side of the road. This property was developed into the Howland Professional Center, 405-425 Niles-Cortland Road. Mill Creek Enterprises retained Western Reserve Land Consultants, Inc. to prepare site plans, excavation and ground level determinations, and storm runoff/drainage calculations for the project. The plans were submitted to the Trumbull County Engineer's Office, and the Ohio Department of Transportation for approval, which was received, after modifications. As part of the drainage system, a thirty-four foot trench drain was built across the driveway to the Professional Center. The trench drain empties into two retention ponds, one on each side of the entrance. It is undisputed that this drainage system, as designed and built, should be sufficient to prevent any runoff from a "ten-year intensity storm."
 {¶ 3} The Professional Center was completed in 2000 or 2001. March 28, 2001, Mill Creek Enterprises conveyed the property to Mill Creek Properties, Ltd. July 23, 2002, a heavy rain occurred. This rain was not sufficient to constitute a "ten-year" rain. Mrs. Hughes, Mr. Frank Nemeth, a neighbor, and Mr. Tom Mariani, the Hughes' sewer man, observed rain flowing from the driveway of the Professional Center, across the Niles-Cortland Road, and into the Hughes' driveway. Part of the Hughes' house was flooded, and suffered damage.
 {¶ 4} After complaints to Mr. Salata, the principal of the various Mill Creek entities, went unheeded, the Hughes' filed a complaint against him, Mill Creek Enterprises, and Mill Creek Properties, in August, 2002. July 21, 2003, another heavy rain occurred, causing flooding to the Hughes' house. Mr. Hughes suffered injuries when he was knocked off his feet by water pouring down his driveway, while trying to emplace sandbags. In the aftermath of the rain, Mrs. Hughes observed traces of mulch, similar to that used in the landscaped portions of the Professional Center's parking lot, in her yard.
 {¶ 5} August 29, 2003, a further heavy rain fell. Once again, the Hughes' house flooded. Mr. Hughes observed a buildup of water in the driveway of the Professional Center, and crossing over the road into his driveway.
 {¶ 6} December 8, 2003, Mr. and Mrs. Hughes filed an amended and supplemental complaint against the Mill Creek entities, with three counts of trespass, relating to the specific incidents of flooding; one count of continuing trespass; and one count each of battery and personal injury due to negligence, relating to Mr. Hughes' fall during the storm of July 21, 2003. Essentially, the Hughes alleged that the Mill Creek entities had altered the natural flow of surface water from the Professional Center in an unreasonable fashion, causing them damage.
 {¶ 7} Mill Creek Enterprises and Mill Creek Properties answered, and, eventually moved for summary judgment. In support of their motions, the Mill Creek entities relied heavily on three affidavits. These included the affidavit of Mr. Joseph Gonda, P.E., of Western Reserve Land Consultants, who had prepared the plans for the Professional Center, and who testified that the plans and construction of the project were in accordance with all applicable government and professional requirements. The Mill Creek entities also introduced the affidavit of Mr. James Mahoney, P.S., who testified that he had conducted the "as-built" survey of the Professional Center property.
 {¶ 8} Primarily, the Mill Creek entities relied on the affidavit of Mr. James Shurell, P.E., L.S.I.T. Mr. Shurell used Mr. Mahoney's surveys to determine that the plans for the Professional Center complied with the facilities actually completed. He further calculated the rain flows occurring due to the three storms complained of by the Hughes, and determined that the driveway drainage system of the Professional Center was more than adequate to accommodate the flows which occurred. He testified to a reasonable degree of engineering certainty that the flooding experienced by the Hughes was not due to the improvement of the Professional Center. Finally, Mr. Shurell testified, "within a reasonable degree of professional certainty," that the flooding of July 23, 2002, was caused by blockage to a 24-inch, reinforced concrete culvert, which was part of the roadway drainage system prior to construction of the Professional Center.
 {¶ 9} The Mill Creek entities further relied on the depositions of Mr. and Mrs. Hughes, in which they admitted that they could not affirm that any diversion of water off the Professional Center's property was unreasonable.
 {¶ 10} In opposing the summary judgment motions of the Mill Creek entities, Mr. and Mrs. Hughes relied on their own testimony, that no flooding had ever occurred to their property prior to construction of the Professional Center, as well as their own observations, and those of Mr. Nemeth and Mr. Mariani, of water flowing over the Professional Center's trench drain toward the Hughes property. Through the affidavit of Mr. George Sanders, the prior owner of the property, the Hughes admitted that severe flooding to the property had occurred in or around 1975, when the creek across the road overflowed. Mr. Sanders attributed this flooding to a plugged drain, evidently related to the road. The Hughes further obtained the affidavit of Mr. J. Robert Lyden, P.E. Mr. Lyden offered his professional opinion that the trench drain and retention pools at the Professional Center were sufficient to handle a "ten-year" rain, unless the drain was obstructed by debris. Throughout the proceedings in the trial court, Mr. and Mrs. Hughes insisted that the trench drain across the Professional Center's driveway was obstructed with debris.
 {¶ 11} November 28, 2005, the trial court granted summary judgment to Mill Creek Enterprises, and Mill Creek Properties. December 27, 2005, Mr. and Mrs. Hughes timely noticed appeal, making three assignments of error:
{¶ l2} "[1.] The court below erred in granting summary judgment in favor of Appellees upon Count One and Count Three of the Amended and Supplemental Complaint pertaining to the events occurring on July 23, 2002, and on August 29, 2003.
{¶ l3} "[2.] The court below erred in granting summary judgment in favor of Appellees upon Counts Two, Five and Six of the Amended and Supplemental Complaint pertaining to events occurring on July 21, 2003.
{¶ l4} "[3.] The court below erred in granting summary judgment in favor of Appellees upon Count Four of the Amended and Supplemental Complaint alleging continuous trespass resulting form the events occurring July 23, 2002, July 21, 2003 and August 29, 2003."
 {¶ 15} In order for a summary judgment to be granted, the moving party must prove: "* * * (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." Mootispaw v.Eckstein, 76 Ohio St.3d 383, 385, 1996-Ohio-389.
 {¶ 16} The Supreme Court stated in Dresher v. Burt, 75 Ohio St.3d 280,296, 1996-Ohio-107, that: "* * * the moving party bears the initial responsibility of informing the trial court of the basis for the motion,and identifying those portions of the record which demonstrate theabsence of a genuine issue of fact on a material element of thenonmoving party's claim. The `portions of the record' to which we refer are those evidentiary materials listed in Civ.R. 56(C), such as the pleadings, depositions, answers to interrogatories, etc, that have been filed in the case. * * *" (Emphasis sic.)
 {¶ 17} If the moving party satisfies this burden, then the nonmoving party has the burden pursuant to Civ.R. 56(E) to provide evidence demonstrating a genuine issue of material fact. If the nonmoving party does not satisfy this burden, then summary judgment is appropriate. Civ.R. 56(E).
 {¶ 18} Appellate courts review a trial court's grant of summary judgment de novo. Brown v. Cty. Commrs. of Scioto Cty. (1993),87 Ohio App.3d 704, 711. The Brown court stated that "we review the judgment independently and without deference to the trial court's determination." Id. An appellate court must evaluate the record "in a light most favorable to the nonmoving party." Link v. Leadworks Corp. (1992),79 Ohio App.3d 735, 741. Furthermore, a motion for summary judgment must be overruled if reasonable minds could find for the party opposing the motion. Id.
 {¶ 19} The substantive rule of decision for this case is provided byMcGlashan v. Spade Rockledge Terrace Condo Dev. Corp. (1980),62 Ohio St.2d 55, at the syllabus:
 {¶ 20} "In resolving surface water disputes, courts of this state will apply a reasonable-use rule under which a possessor of land is not unqualifiedly privileged to deal with surface water as he pleases, nor absolutely prohibited from interfering with the natural flow of surface waters to the detriment of others. Each possessor is legally privileged to make a reasonable use of his land, even though the flow of surface waters is altered thereby and causes some harm to others, and the possessor incurs liability only when his harmful interference with the flow of surface water is unreasonable. (Butler v. Peck, 16 Ohio St. 334, and its progeny, overruled to extent inconsistent herein.)"
 {¶ 21} In surface water disputes, plaintiffs have the burden of proving that a defendant's acts were unreasonable, and the proximate cause of the damages alleged. Montgomery v. Bobka (Dec. 17, 1992), 8th Dist. No. 63814, 1992 Ohio App. LEXIS 6424, at *6. "In determining the reasonableness of an interference, the trier of fact is to be guided by the rules stated in 4 Restatement of Torts 2d 108-142, Sections 822-831." McGlashan at 60. (Emphasis added.) "Under a rule of reasonableness, determined on a case-by-case basis, the essence of liability is measured by principles of common-law negligence." Ogle v.Kelly (1993), 90 Ohio App.3d 392, 396.
 {¶ 22} We deal with the assignments of error collectively, since all depend upon the same issues: did Mr. and Mrs. Hughes introduce sufficient evidence, pursuant to Civ.R. 56, to show the existence of a genuine issue of material fact regarding whether the Mill Creek entities unreasonably interfered with the flow of surface water from the Professional Center, and whether such interference was a proximate cause of damage to the Hughes' property? The answer is different, for each of the appellees.
 {¶ 23} The evidence before the trial court indicated that Mill Creek Enterprises transferred ownership of the Professional Center to Mill Creek Properties in 2001. All of the incidents of flooding complained of by the Hughes occurred well afterwards. The syllabus law ofMcGlashan establishes that the "possessor" of real property may be held liable by others for his interference with the natural flow of surface waters. Since Mill Creek Enterprises was not the "possessor" of the Professional Center when the subject incidents occurred, it cannot be held liable, and the trial court's grant of summary judgment in its favor was correct.
 {¶ 24} We believe the foregoing analysis is bolstered by the factual underpinnings of the Hughes' arguments. The Hughes do not dispute that the drainage system for the Professional Center was correctly designed, or that it was properly constructed. Rather, the entire thrust of their argument in the trial court was that Mill Creek Properties failed to maintain the drainage system free of debris, thus causing an overflow of waters during heavy rains. Thus, whether the Hughes can succeed depends on showing that Mill Creek Properties — possessor of the Professional Center at the times of the floodings — unreasonably interfered with the natural flow of water by allowing such obstruction (if any). Mill Creek Enterprises' activities in designing and building the Professional Center are beside the point.
 {¶ 25} A different result obtains for Mill Creek Properties. It points to the undisputed fact that the drainage system was properly designed and constructed. More particularly, it relies on the expert opinions of Mr. Shurell that: (1) the flooding of the Hughes' property was not due to a failure in the Professional Center's drainage system; and, (2) that the initial flooding of July 23, 2002 was likely caused by blockage to the 24-inch culvert in the Niles-Cortland Road. Finally, it points to the Hughes' admissions, in their depositions, that they cannot say any diversion of water from the Professional Center was unreasonable.
 {¶ 26} In summary judgment proceedings, wherein all evidence must be construed in favor of the nonmovants, the Hughes pointed to sufficient evidence in the record to defeat the motion of Mill Creek Properties. As the Fifth District noted in overruling a summary judgment motion in favor of appellee coal company, landowners are competent to testify regarding "the past history of flooding on their property."McConnell v. Valley Mining Co., Inc. (Nov. 13, 1996), 5th Dist. No. 96AP050046, 1996 Ohio App. LEXIS 6012, at *6. Testimony that flooding only occurred after a defendant in a surface water case commenced operations is sufficient to create a genuine issue of material fact as to whether that defendant's activities caused the flooding. Id. The fact that a defendant introduces expert testimony that its activities were not the cause of any flooding simply creates an evidentiary issue for the trier of fact. Id. at *6-8.
 {¶ 27} In the instant case, the Hughes introduced evidence that flooding had occurred to their property only once prior to the construction of the Professional Center, in 1975. The evidence establishes that there have been three incidents of flooding in the past few years, since completion of the Center. They introduced the affidavits of Mr. Nemeth and Mr. Mariani, which clearly indicated that the trench drain at the Professional Center was not functioning as designed on July 23, 2002, during the first flood. They introduced the expert testimony of Mr. Ryder, indicating that the trench drain should have functioned correctly, absent blockage. They introduced evidence that there may have been blockage of the trench drain on the dates in question. They introduced evidence that Mill Creek Properties had no program for cleaning and maintaining the trench drain.
 {¶ 28} On the other hand, Mill Creek Properties introduced evidence that its drainage system was properly designed and constructed; that it could handle the rainfall for the periods of flooding complained of by the Hughes; and (via the expert opinion of Mr. Shurell) an alternate explanation for the flooding of July 23, 2002 — i.e., that the 24-inch culvert under the road was blocked.
 {¶ 29} The Restatement analysis of reasonableness in surface water cases, approved by the Ohio Supreme Court in McGlashan at 60, is fact-sensitive. In McGlashan, the Supreme Court specifically indicated that the trier of fact — not the court — was to apply the Restatement rule of reasonableness in resolving surface water cases. Summary judgment is only to be granted in those rare cases where a plaintiff cannot point to some competent evidence to support the elements of his or her case. The Hughes pointed to some competent evidence in the record indicating that the flooding occurred due to blockage of the trench drain at the Professional Center. Mill Creek Properties pointed to some competent evidence that the drainage system was sufficient, and that the flooding occurred due to blockage of the 24-inch road culvert. It seems to us that a jury is required to resolve these fact issues, as well as the only legally significant question presented: whether Mill Creek's alteration of the flow of surface water on its property was reasonable, even if it did result in some flooding of the Hughes' property.
 {¶ 30} The Mill Creek entities point to the decision of the Fourth Appellate District in Ferguson v. Breeding (Aug. 25, 2000), 4th Dist. No. 99 CA 22, 2000 Ohio App. LEXIS 4093. In that case, the Fourth District affirmed the grant of summary judgment to appellee landowners, and Lawrence County, for the alleged failure to build or maintain a deeper drainage ditch on appellee's property. Id. at *1-5, 22. The court held that appellants failed to show any duty on the part of the neighboring landowners to build or maintain such a ditch, or that the neighboring landowners had interfered with the natural surface water flow. Id. at *13.
 {¶ 31} Ferguson is distinguishable from the case instant. It seems that in Ferguson, the drainage ditch was part of the county storm drainage system, and that a duty, if any, regarding its design and construction would lie with the county (which possessed immunity). Herein, the drainage system clearly belongs to Mill Creek Properties. Further, the Hughes have introduced evidence that surface water flow may have been altered due to the building of the Professional Center. No such evidence existed in Ferguson.
 {¶ 32} The judgment of the Trumbull County Court of Common Pleas, granting summary judgment to Mill Creek Enterprises, Inc., is affirmed. Otherwise, its judgment is reversed, and this matter is remanded for further proceedings consistent with this opinion.
CYNTHIA WESTCOTT RICE, J., concurs,
DIANE V. GRENDELL, J., dissents with a Dissenting Opinion.