[Cite as *VRBT, L.L.C. v. Ohio Dept. of Transp.*, 2011-Ohio-4840.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

VRBT LLC

    Plaintiff

    v.

OHIO DEPARTMENT OF TRANSPORTATION

    Defendant
    Case No. 2008-07632

Judge Joseph T. Clark

<u>DECISION</u>

{¶1}  Plaintiff brought this action against defendant, the Ohio Department of Transportation (ODOT), alleging negligence and nuisance.[1]  The issues of liability and damages were bifurcated and the case proceeded to trial on the issue of liability.

{¶2}  This case concerns the drainage system on an overpass bridge on Interstate 77 (bridge) in Independence, Ohio.  Plaintiff, VRBT LLC (VRBT), owns property that is adjacent to the overpass, including a building that is located under the bridge.  Plaintiff alleges that in May 2006, portions of a parapet wall on the bridge began to deteriorate and fall, causing damage to the roof of plaintiff's building.  Plaintiff further alleges that debris from the highway accumulated in the storm sewers and connecting

---

[1]Plaintiff's amended complaint also alleges a claim of "breach of easement."  The easement provides, in relevant part, that defendant's right to "use, operate, inspect, maintain and repair" the bridge and drainage system "shall not be exercised in any manner which shall result in an interference with or the taking of [plaintiff's] property or property rights."  (Plaintiff's Exhibit 2, page 9.)  Inasmuch as plaintiff has not alleged that defendant's maintenance efforts either exceeded its right to maintain the drainage system or caused damage to plaintiff's property, and for the reasons stated below, the court finds that plaintiff's cause of action sounds in negligence and nuisance.

drainage pipes that were constructed by defendant and that such debris obstructed the drainage system and caused water to flood onto plaintiff's property during a rain storm on August 7, 2007.

{¶3} With regard to plaintiff's claim that falling debris damaged the roof of its building, the court notes that defendant's answers to plaintiff's interrogatories and request for admissions state that defendant admits liability for such damage in the amount of $3,450. (Plaintiff's Exhibit 11, page 5.) At trial, counsel for plaintiff confirmed the cost of the roof repairs. Accordingly, the court finds that plaintiff is entitled to damages in the amount of $3,450 for roof repairs.

{¶4} Kenneth Haber, a civil engineer, was employed as a project manager for Precision Environmental (Precision), the sole tenant of the building on plaintiff's property. Haber testified that he had reviewed defendant's construction plans and that he was familiar with the bridge and the drainage system that ran through plaintiff's property. Haber explained that water accumulating on the bridge drained into "scuppers" and then flowed down through a series of pipes which were accessible through several manholes that were located on plaintiff's property. Haber testified that defendant constructed a "closed" drainage system, meaning that only water from the bridge flowed through it.

{¶5} According to Haber, he had called defendant a "couple times" prior to August 7, 2007, to report problems with the drainage system. On August 7, 2007, Haber was working at Precision when he became aware that water had begun to flow from the drainage system onto plaintiff's property. Haber observed water flowing from manholes "S6" and "S7" on the south side of the building and he saw water seeping into the interior of the building through the walls. Haber contacted Brian Jung, ODOT's head of maintenance at the "Independence Yard," who arrived later that day to view the flooding. Haber testified that Jung returned a few days later and used a remote sewer camera to view "P10," the section of drain pipe that connected S6, S7, and S10. According to Haber, Jung was unable to view the entire length of P10 as a result of debris that was blocking the system and he informed Haber that another machine was needed to unclog the blockage.

{¶6} Marc Garland, Precision's Safety Director, testified that he observed the

flooding on August 7, 2007, and that he helped other employees place sandbags in an effort to keep water from entering the building. Garland communicated via email with David Ray, Highway Management Administrator for ODOT's District 12, and Garland forwarded photographs to Ray which depicted water flowing out of the manholes onto plaintiff's property. (Plaintiff's Exhibits 7 and 8.) According to Garland, Ray was responsive to his requests for assistance. Garland testified that approximately one week after the storm, he watched ODOT employees inspect the drainage pipe connecting S7 and S10. Garland related that he viewed video from ODOT's remote camera which showed "considerable blockage" and that he saw ODOT's employees retrieve debris from S7, including a section of corrugated plastic pipe that was approximately one and one-half feet in length.

{¶7} In order for plaintiff to prevail under a theory of negligence, plaintiff must establish that ODOT owed plaintiff a duty to maintain the bridge's drainage system in working order, that ODOT's acts or omissions resulted in a breach of that duty, and that plaintiffs suffered damages as a proximate result thereof. *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282. The duty element of a negligence claim may be established by common law, legislative enactment, or the particular circumstances of a given case. *Wallace v. Ohio Dept. of Commerce*, 96 Ohio St.3d 266, 2002-Ohio-4210, ¶23.

{¶8} Pursuant to R.C. 5501.11(A), ODOT is responsible for establishing "state highways on existing roads, streets, and new locations and [to] construct, reconstruct, widen, resurface, maintain, and repair the state system of highways and the bridges and culverts thereon." R.C. 5501.49 provides, in pertinent part, "[t]he public entity responsible for maintaining the pavements and sidewalks on either end of the bridge is responsible for the routine maintenance of all bridges located on the state highway system within the municipal corporation. * * * (3) 'Routine maintenance' includes without limitation, cleaning debris from the deck, sweeping, snow and ice removal, minor wearing surface patching, cleaning bridge drainage systems * * *."

{¶9} As a general rule, "[w]here damage to one property is alleged by water run-off created by an adjacent property owner, Ohio has adopted a reasonable-use rule with respect to water run-off. *McGlashan v. Spade Rockledge Terrace Condo Dev. Corp.* (1980), 62 Ohio St.2d 55, 60." *Peters v. Angel's Path, LLC*, Erie App. No. E-06-

059, 2007-Ohio-7103, ¶33. Similarly, "a possessor of land is not unqualifiedly privileged to deal with surface water as he pleases, nor absolutely prohibited from interfering with the natural flow of surface waters to the detriment of others. Each possessor is legally privileged to make a reasonable use of his land, even though the flow of surface waters is altered thereby and causes some harm to others. He incurs liability only when his harmful interference with the flow of surface water is unreasonable." Id., citing *McGlashan*, at the syllabus. The reasonableness of an interference is determined by the trier of fact. Id.

{¶10} Plaintiff alleges that ODOT was negligent in failing to maintain the bridge drainage system and that such negligence proximately caused damage to plaintiff's building. ODOT may be held liable for damage caused by defects, or dangerous conditions, on state highways where it has notice of the condition, either actual or constructive. *McClellan v. Ohio Dept. of Transp.* (1986), 34 Ohio App.3d 247, paragraph one of the syllabus. "Actual notice exists where, from competent evidence, the trier of fact can conclude the pertinent information was personally communicated to, or received by, the party." *Kemer v. Ohio Dept. of Transp.*, Franklin App. No. 09AP-248, 2009-Ohio-5714, ¶21, citing *In re Fahle's Estate* (1950), 90 Ohio App. 195, 197. Constructive notice is that notice which the law regards as sufficient to give notice and is regarded as a substitute for actual notice. Id. at ¶24.

{¶11} Ray explained that District 12 utilized a systematic annual work plan which includes identifying areas of concern using information obtained from both ODOT employees and county managers. According to Ray, the drainage system that ran from the bridge through plaintiff's property was "complex" and appeared to have several outlets which could have been a source of water intrusion. Ray testified that he was familiar with Precision's business in that his office was located less than one mile from plaintiff's property. Ray stated that he recalled the August 7, 2007 storm, and that his office received many reports concerning flooding on the interstate highways in District 12 and that he engaged in extensive communications with his managers concerning flood clean-up efforts. Ray recalled Garland's inquiries and related that they had a "good relationship" such that Garland would call him when he needed assistance; however, Ray testified that he did not recall receiving any complaint from Precision's

employees regarding a backup or flooding on plaintiff's property prior to August 7, 2007.

{¶12} Haber testified that he had called Jung on "a couple" occasions before the incident and that employees of ODOT had responded to his complaints and used a "vac truck" to clear debris from the drain pipes at manholes S6 and S7. According to Haber, ODOT did not perform regular maintenance on the drainage system and he did not recall ODOT cleaning P10 beyond S7. Haber testified that he had called to notify ODOT of a problem with the drainage system approximately one week prior to the August 7, 2007 rainstorm, but he did not receive a response.

{¶13} Based upon the evidence, the court finds that plaintiff has failed to prove that ODOT was on notice that the bridge drainage system was clogged or otherwise malfunctioning prior to August 7, 2007. The only evidence that plaintiff presented to establish such notice was Haber's testimony that he notified ODOT of a drainage problem one week prior to the incident; however, the court finds Haber's testimony regarding the alleged call is not credible. Ray testified that defendant did not have a record of any such call. Although plaintiff presented evidence of extensive written communications with ODOT concerning the efforts to clear the drainage system after August 7, 2007, there is no document evidencing prior notice. Furthermore, contrary to Haber's assertion, the evidence shows that ODOT performed scheduled maintenance on the drainage system and Haber acknowledged that ODOT had typically responded in a timely manner to plaintiff's calls for service. Thus, the court concludes that ODOT had neither actual nor constructive notice of a blockage in the bridge drainage system prior to August 7, 2007, and that ODOT's maintenance program, including its response to plaintiff's requests for cleaning, was reasonable under the circumstances.

{¶14} Even assuming that plaintiff had proved that ODOT had notice of a defect in the drainage system and that it failed to timely respond to plaintiff's complaints, plaintiff would still have to prove that ODOT's breach proximately caused damage to its property. *McClellan,* supra.

{¶15} Plaintiff's expert, Don Elewski, is a civil engineer who served as the Engineer for the city of Independence, Ohio for over 30 years. According to Elewski, the bridge drainage system receives water only from the highway bridge and the pipes which comprise the system are of sufficient size to handle the volume of water that fell

during the August 7, 2007 rainstorm. Elewski testified that based upon his review of the plans for the drainage system and the photographs which show water flowing from S6 and S7, the flood was caused by debris that blocked or constricted the flow of water in the pipes. Elewski opined that the debris entered the system from the highway and that the blockage was the sole cause of the flooding.

{¶16} Defendant's expert, Louis Mincek, is a professionally licensed civil engineer who has worked at ODOT for over 22 years. Mincek criticized Elewski's opinion regarding the cause of the flood as "an oversimplification" and he opined that an engineering analysis of the drainage system, including a calculation of system hydrologic pressure, capacity, and flow rates, was necessary to determine the cause of the flood. Mincek testified that the drainage system terminated at West Creek and he opined that calculating the "outflow" at that point was important in that a creek swollen with rain water could have resulted in a submerged outlet which would in turn cause the drainage system to fail. Mincek further testified that the bridge drainage system is not a single closed system, but rather part of a larger system, partially under the control of the city of Independence.

{¶17} The evidence shows that when ODOT's employees first inspected the premises soon after the flooding, the cause of the flood was not immediately determined. Ray testified that he directed his staff to use a sewer camera to inspect the drains and that, due to the complexity of the system, he asked Mincek to review the appropriate plans to assist in determining both the cause of the flooding and the extent to which ODOT was responsible for any repair and maintenance. The court finds that Mincek's testimony regarding the analysis necessary to determine the cause of the flood is persuasive and that plaintiff has failed to prove that defendant committed a breach of its duty which proximately caused damage to plaintiff's property.

{¶18} For the foregoing reasons, the court finds that plaintiff has failed to prove its negligence and nuisance claims regarding the flooding of its property, but that plaintiff is entitled to damages for roof repairs in the amount of $3,450. Accordingly, judgment shall be rendered in favor of plaintiff in the amount of $3,475 which includes the filing fee paid by plaintiff.



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

VRBT LLC

     Plaintiff

     v.

OHIO DEPARTMENT OF TRANSPORTATION

     Defendant

Case No. 2008-07632

Judge Joseph T. Clark

<u>JUDGMENT ENTRY</u>

{¶19}  This case was tried to the court on the issue of liability.  The court has considered the evidence and for the reasons set forth in the decision filed concurrently herewith, judgment is hereby rendered in favor of plaintiff in the amount of $3,475, which includes the filing fee paid by plaintiff.  Court costs are assessed against defendant.  The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

_____
JOSEPH T. CLARK
Judge

cc:

Andrew J. Natale
Nora E. Loftus
2500 Key Center
127 Public Square
Cleveland, Ohio 44114

Stephanie D. Pestello-Sharf
Assistant Attorney General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

AMR/dms
Filed August 4, 2011
To S.C. reporter September 22, 2011