[Cite as *Parsons v. Ohio Dept. of Transp.*, 2011-Ohio-5323.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

MARK E. PARSONS

    Plaintiff

    v.

DEPARTMENT OF TRANSPORTATION

    Defendant
    Case No. 2008-11290

Judge Joseph T. Clark
Magistrate Anderson M. Renick

MAGISTRATE DECISION


{¶1} Pursuant to Civ.R. 53, Magistrate Anderson M. Renick was appointed to conduct all proceedings necessary for decision in this matter.

{¶2} Plaintiff brought this action against defendant, the Ohio Department of Transportation (ODOT), alleging negligence. The issues of liability and damages were bifurcated and the case proceeded to trial on the issue of liability.

{¶3} Plaintiff alleges that defendant failed to maintain a drainage ditch that runs alongside State Route (SR) 555 and that, as a result of such failure, the drainage system became obstructed causing water and debris to flow onto plaintiff's property during a rainstorm on or about June 6, 2008. Plaintiff testified that rain water accumulated on his property and deposited dirt and a "black, mirky" substance which contaminated his garden and a spring that he used to water livestock. (Plaintiff's Exhibits A1-12 and B1-14.)

{¶4} In order for plaintiff to prevail under a theory of negligence, plaintiff must establish that ODOT owed plaintiff a duty to maintain the drainage system in working

order, that ODOT's acts or omissions resulted in a breach of that duty, and that plaintiff suffered damages as a proximate result thereof. *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282. The duty element of a negligence claim may be established by common law, legislative enactment, or the particular circumstances of a given case. *Wallace v. Ohio Dept. of Commerce*, 96 Ohio St.3d 266, 2002-Ohio-4210, ¶23.

{¶5} Pursuant to R.C. 5501.11(A), ODOT is responsible for establishing "state highways on existing roads, streets, and new locations and [to] construct, reconstruct, widen, resurface, maintain, and repair the state system of highways and the bridges and culverts thereon."

{¶6} As a general rule, "[w]here damage to one property is alleged by water run-off created by an adjacent property owner, Ohio has adopted a reasonable-use rule with respect to water run-off. *McGlashan v. Spade Rockledge Terrace Condo Dev. Corp.* (1980), 62 Ohio St.2d 55, 60." *Peters v. Angel's Path, LLC*, Erie App. No. E-06-059, 2007-Ohio-7103, ¶33. Similarly, "a possessor of land is not unqualifiedly privileged to deal with surface water as he pleases, nor absolutely prohibited from interfering with the natural flow of surface waters to the detriment of others. Each possessor is legally privileged to make a reasonable use of his land, even though the flow of surface waters is altered thereby and causes some harm to others. He incurs liability only when his harmful interference with the flow of surface water is unreasonable." Id., quoting *McGlashan*, at the syllabus. The reasonableness of an interference is determined by the trier of fact. Id.

{¶7} ODOT may be held liable for damage caused by defects, or dangerous conditions, on state highways where it has notice of the condition, either actual or constructive. *McClellan v. Ohio Dept. of Transp.* (1986), 34 Ohio App.3d 247, paragraph one of the syllabus. "Actual notice exists where, from competent evidence, the trier of fact can conclude the pertinent information was personally communicated to, or received by, the party." *Kemer v. Ohio Dept. of Transp.*, Franklin App. No. 09AP-248, 2009-Ohio-5714, ¶21, citing *In re Fahle's Estate* (1950), 90 Ohio App. 195, 197.

Constructive notice is that notice which the law regards as sufficient to give notice and is regarded as a substitute for actual notice.  Id. at ¶24.

{¶8} According to plaintiff, he contacted defendant's District 10 office several times after the incident and defendant's employees inspected his property on several occasions.  Plaintiff's complaints to defendant were documented and forwarded to James Kemp, a maintenance engineer for defendant.  (Defendant's Exhibit E.) According to defendant's records, Kemp visited the site on June 11, 2008, and on the same date he scheduled "a ditching crew with a gradall to re-establish" the ditch. Plaintiff testified that after one such inspection Kemp informed him that defendant would clean the ditch.  Plaintiff also met with Robert Roush, a transportation engineer who worked in defendant's District 10 office in Marietta, Ohio.  Both Kemp and Roush advised plaintiff that defendant was not responsible for cleaning any debris on plaintiff's property.

{¶9} At trial, Roush identified relevant portions of defendant's location and design manual which sets forth standards for designing and maintaining roadway drainage ditches.  (Defendant's Exhibit F.)  According to the manual, drainage ditches constructed along relatively low-traffic highways, such as SR 555, were designed based upon a "five-year frequency storm."  Roush testified that an unusually heavy rain could cause a properly constructed and maintained drainage ditch to overflow.

{¶10}    Roush stated that defendant's maintenance records show that on March 5, 2008, defendant's employees cleaned all the drainage structures on SR 555 in District 10, in preparation for the resurfacing project.  (Defendant's Exhibit D.)  Roush related that it was defendant's practice to inspect the depth and width of roadway ditches prior to resurfacing.  Roush testified that a private contractor, Shelly & Sands, Inc., had worked on a resurfacing project on SR 555 from May through mid-July 2008. According to Roush, defendant did not receive any complaint regarding drainage on SR 555 between March and June 2008.  Roush testified that he spoke with plaintiff after the

incident and that he did not notice any defect when he inspected the ditch on September 18, 2008.

{¶11}    The evidence shows that defendant's employees responded to plaintiff's complaints and inspected the drainage ditches soon after they were notified of the overflow on plaintiff's property.  Roush's testimony regarding the maintenance of the ditches convinces the court that defendant had neither actual nor constructive notice of any obstruction or defect which would cause the drainage system to overflow. Accordingly, the court finds that plaintiff has failed to prove that defendant committed a breach of its duty to maintain the highway drainage ditch.

{¶12}    Furthermore, even if defendant had committed a breach of its duty, to prevail on his negligence claim plaintiff must establish that such breach proximately caused damage to his property.  On cross examination, plaintiff acknowledged that he had received a letter from Anthony Ruggiero, an environmental permitting and compliance officer for Shelly & Sands, Inc., wherein Ruggiero reported results of tests on both soil and water samples that were taken from plaintiff's property on September 3, 2008.  (Defendant's Exhibit A.)  According to Ruggiero, Stantec Consulting Services, Inc. performed tests which "show no detectable hydrocarbons" in the spring water samples and "no increase in hydrocarbons above the control soil sample."  In his report, Ruggiero states that he conducted a site inspection of plaintiff's property and detected "no signs consistent with an asphalt emulsion run off," such as "black asphalt sticking to vegetation, and black stringing asphalt floating and/or sticking to algae in the spring." Plaintiff testified that he believed the black, mirky substance was residue from the roadway; however, he admitted that he did not know what the substance was and that he did not observe the substance wash off the roadway.  Although photographs of plaintiff's property show a few areas where somewhat murky puddles of water had accumulated on soil and vegetation, plaintiff failed to show that the substance damaged his property.

{¶13} For the foregoing reasons, the court finds that plaintiff has failed to prove his negligence claim. Accordingly, judgment is recommended in favor of defendant.

{¶14} *A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i). If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed. A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*

_____
ANDERSON M. RENICK
Magistrate

cc:

Christopher P. Conomy
Assistant Attorney General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

Mark E. Parsons
14653 State Route 555
Cutler, Ohio 45724

AMR/dms
Filed September 14, 2011
To S.C. reporter October 13, 2011