[Cite as *Goering v. Chriscon Builders, Ltd.*, 2011-Ohio-5480.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| ROBERT A. GOERING, TREASURER HAMILTON COUNTY, OHIO, | : | APPEAL NO. C-100729 TRIAL NO. A-0504836 |
| Plaintiff, | : | *O P I N I O N.* |
| | : | |
| vs. | : | |
| CHRISCON BUILDERS LTD., | : | |
| Defendant/Third-Party Plaintiff-Appellant | : | |
| and | : | |
| STATE OF OHIO, EX REL. CHRISCON BUILDERS, LTD., | : | |
| | : | |
| Relator, | : | |
| vs. | : | |
| HAMILTON COUNTY ENGINEER, | : | |
| HAMILTON COUNTY PUBLIC WORKS, | : | |
| CITY OF CINCINNATI, | : | |
| HAMILTON COUNTY COMMISSIONERS, | : | |
| HAMILTON COUNTY REGIONAL PLANNING COMMISSION and HAMILTON COUNTY RURAL ZONING COMMISSION, | : | |
| Third-Party Defendants-Appellees. | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  October 28, 2011

*Matre & Beyke Co., LPA, Kerrie K. Matre, Joseph L. Beyke, James A. Matre Co., LPA*, and *James A. Matre,* for Defendant/Third-Party Plaintiff-Appellant Chriscon Builders, Ltd., and State of Ohio, ex Rel. Chriscon Builders, Ltd.

*Mark C. Vollman,* Assistant Prosecuting Attorney, and *Dale H. Bernard,* Assistant Prosecuting Attorney, for Defendants-Appellees Hamilton County Engineer, Hamilton County Public Works, Hamilton County Commissioners, Hamilton County Regional Planning Commission, and Hamilton County Rural Zoning Commission,

*Terrance A. Nestor*, Assistant City Solicitor, for Defendant-Appellee City of Cincinnati.

Please note:  This case has been removed from the accelerated calendar.

SYLVIA S. HENDON, **Judge.**

{¶1}   Defendant/third-party plaintiff-appellant Chriscon Builders, Ltd., ("Chriscon") has appealed from the trial court's Civ.R. 41(B)(2) dismissal of its mandamus action.

{¶2}   This cause of action originated in June of 2005 when the Hamilton County Treasurer filed a complaint against Chriscon seeking payment for delinquent taxes and foreclosure of the property known as Auditor's No. 590-11-446.   This property was owned by Chriscon and was located in the Bilamy Creek Subdivision, which had been developed by Chriscon.   Chriscon denied all allegations in the complaint, and it filed a third-party complaint raising claims against various county defendants and the Metropolitan Sewer District of Greater Cincinnati.   Chriscon later filed an amended third-party complaint that additionally named the City of Cincinnati as a defendant and that included a petition for a writ of mandamus.

{¶3}   Upon motion by the county defendants, the trial court granted judgment on the pleadings to the defendants on all claims contained in Chriscon's complaint.   But Chriscon's petition for a writ of mandamus proceeded to a bench trial.   At the close of Chriscon's case-in-chief, the defendants moved for directed verdicts under Civ.R. 50.   The trial court converted the motions into ones for dismissal pursuant to Civ.R. 41(B)(2), and it granted the motions.

### *Statement of Facts*

{¶4}   Chriscon, run by its sole member, Amy Christian, is the owner of a development known as the Bilamy Creek Subdivision.   Chriscon acquired its interest in the subdivision from its predecessor company, Chriscon Investments, Inc.   The

land upon which the Bilamy Creek Subdivision is located was first purchased by Amy Christian in 1990. Christian had plans to develop a subdivision on the property, and she contacted Craig Jarvis, an engineer with Jarvis and Associates, to develop a residential subdivision design. The subdivision was located in a 69-acre watershed, and its design was required to comply with applicable drainage standards. Jarvis submitted a plan for a detention basin that complied with a drainage standard, in industry terms, of ten-year pre-construction and 25-year post-construction.

{¶5} This drainage plan was submitted to the Hamilton County Planning Commission, the Metropolitan Sewer District of Greater Cincinnati, and the Hamilton County Department of Public Works. Jarvis' plan was not accepted as originally proposed. After revision, a plan was eventually approved that proposed construction of a detention basin meeting a drainage standard of two-year pre-construction and 50-year post-construction. This plan included the drainage of off-site water through the basin, and it placed the basin in an existing streambed. The final plan complied with a more rigorous standard than initially proposed, and it involved a detention basin with a much larger capacity. It also resulted in a reduction in building lots in the subdivision from 14 to 12.

{¶6} Chriscon built the approved detention basin on its property. The detention basin functioned well for the first two years, but it then began to suffer from silting problems and become clogged with debris. In 1997, Christian extensively cleaned out the basin. Following the cleaning, the basin continued to suffer from silting and sedimentation problems. The basin has not been cleaned since Christian cleaned it in 1997. According to Christian, the extensive silt and debris problems suffered by the detention basin were caused by new upstream

developments and by a street improvement project in Parkview Heights, a neighboring subdivision.

{¶7}   As a result of the silting and clogging, the detention basin has been damaged, and Chriscon has not been able to turn over control of the subdivision to the neighborhood homeowner's association.

*Petition for a Writ of Mandamus*

{¶8}   As stated, this action was initiated by the filing of a complaint against Chriscon seeking payment of delinquent taxes and foreclosure of Chriscon's property.  In response, Chriscon filed a third-party complaint and a petition for a writ of mandamus.  The sole issue in this appeal is whether the trial court erred in dismissing Chriscon's petition for a writ of mandamus.  To establish entitlement to a writ of mandamus, a "relator must establish a clear legal right to the relief prayed for, that respondent has a clear legal duty to perform the requested act, and that relator has no plain and adequate remedy at law."  *State ex rel. Cincinnati Enquirer v. Streicher*, 1st Dist. No. C-100820, 2011-Ohio-4498, ¶6, quoting *State ex rel. Seikbert v. Wilkinson*, 69 Ohio St.3d 489, 490, 1994-Ohio-39, 633 N.E.2d 1128.

{¶9}   In its petition for a writ of mandamus, Chriscon alleged the following: that additional properties not situated in the Bilamy Creek Subdivision were permitted by the county to direct storm drainage into Chriscon's private detention basin; that following its approval of Bilamy Creek's detention basin, the county permitted the construction of several large developments upstream from Bilamy Creek; that the county permitted the design of the upstream developments' storm-water-management plans to direct surface storm water directly into Bilamy Creek's private detention basin; that the upstream developments were held to less onerous

storm-drainage restrictions; that a street improvement and resurfacing project on nearby private residences resulted in drainage into the Bilamy Creek detention basin; and that these upstream and neighboring properties direct water, dirt, silt and other materials into Bilamy Creek's detention basin.

{¶10} According to Chriscon, the defendants' actions deprived Chriscon of all reasonable economic use of its property and resulted in the taking of Chriscon's property for public use without due process of law and without just compensation. In its petition for a writ of mandamus, Chriscon sought an order directing the Hamilton County Commissioners to initiate eminent domain proceedings and to provide Chriscon just compensation for the taking of its property.

{¶11} During the bench trial on its mandamus action, Chriscon presented testimony regarding the impact of the upstream and neighboring developments referenced in its petition. Specifically, Chriscon alleged that construction of an addition to the Northern Hills United Methodist Church, construction of an EZ Storage facility, construction of a Franciscan and a Gambro medical facility, and a street improvement and resurfacing project in the Parkview Heights subdivision resulted in excessive drainage into its detention basin, causing silting and clogging problems and constituting a taking of its property.

{¶12} At the close of Chriscon's presentation of evidence, the defendants moved for a directed verdict pursuant to Civ.R. 50. The trial court properly converted the defendants' motions into motions to dismiss pursuant to Civ.R. 41(B)(2), and it granted the motions.

{¶13} In granting the motions to dismiss, the trial court found that all claims for a taking relating to the construction on the Northern Hills United Methodist

Church and the construction on the Franciscan and Gambro Medical Buildings had been raised outside of the applicable statute of limitations. With respect to the construction on the EZ Storage facility and the Parkview Heights subdivision improvements, the court found that any water draining into Chriscon's basin from these projects was not unreasonable and did not constitute a taking.

{¶14} Chriscon now appeals from the trial court's entry of dismissal. In one assignment of error, Chriscon argues that the trial court erred in dismissing its petition for a writ of mandamus.

### Civ.R. 41(B)(2)

{¶15} Pursuant to Civ.R. 41(B)(2), in a trial to the bench, a defendant may move for dismissal at the close of the presentation of the plaintiff's evidence on the grounds that the plaintiff has failed to prove its case and has not demonstrated that it is entitled to relief.

{¶16} When ruling on a Civ.R. 41(B)(2) motion to dismiss, a trial court is entitled to weigh the evidence presented. *St. Clair v. Person*, 1st Dist. No. C-010094, 2002-Ohio-1129. The court is not required to view the evidence in the light most favorable to the plaintiff. *Harris v. Cincinnati* (1992), 79 Ohio App.3d 163, 168, 607 N.E.2d 15, citing *Jacobs v. Bd. of Cty. Commrs.* (1971), 27 Ohio App.2d 63, 65, 272 N.E.2d 635. A reviewing court may not set aside the trial court's judgment on such a motion unless the judgment was erroneous as a matter of law or against the manifest weight of the evidence. *Person*, supra.

*There was No Taking*

{¶17} Chriscon argues in its sole assignment of error that the trial court's dismissal under Civ.R. 41(B)(2) was in error. At trial, Chriscon had argued that the defendants had committed both a regulatory taking and a taking by a substantial interference with a property right. Chriscon has narrowed the scope of this appeal by limiting its argument to the trial court's findings regarding a taking by a substantial interference with a property right. Specifically, Chriscon alleges that the trial court erred in finding that the county's street improvement and resurfacing project in the Parkview Heights subdivision did not constitute a substantial and unreasonable interference with Chriscon's property rights.

{¶18} According to Chriscon, the street resurfacing project in Parkview Heights resulted in an increased water run-off that ran directly into Chriscon's detention basin. This increased water run-off contributed to the silting and sedimentation problems in the basin and substantially interfered with Chriscon's property interest in the basin.

{¶19} Ohio has adopted a reasonable-use rule to be applied when resolving surface-water controversies. *McGlashan v. Spade Rockledge Terrace Condo Dev. Corp.* (1980), 62 Ohio St.2d 55, 60, 402 N.E.2d 1196. The reasonable-use rule is as follows: "[A] possessor of land is not unqualifiedly privileged to deal with surface water as he pleases, nor is he absolutely prohibited from interfering with the natural flow of surface waters to the detriment of others. Each possessor is legally privileged to make a reasonable use of his land, even though the flow of surface waters is altered thereby and causes some harm to others. He incurs liability only when his harmful interference with the flow of surface water is unreasonable." Id., quoting

Kinyon & McClure, Interferences with Surface Waters (1940), 24 Minn. L. Rev. 891, 904.

{¶20} When determining whether the interference caused by the flow of surface water is unreasonable, the rules stated in 4 Restatement of the Law 2d, Torts (1965) 108-142, Sections 822-831 are instructive. Id. The flow of surface water onto another's property is unreasonable if "the gravity of the harm outweighs the utility of the actor's conduct." Restatement of the Law 2d, Torts (1979), Section 826. The following factors are relevant to determining the gravity of harm caused by the flow of water: "(a) [t]he extent of the harm involved; (b) the character of the harm involved; (c) the social value that the law attaches to the type of use or enjoyment invaded; (d) the suitability of the particular use or enjoyment invaded to the character of the locality; and (e) the burden on the person harmed of avoiding the harm." Restatement of the Law 2d, Torts (1979), Section 827.

{¶21} Here, the trial court found that the increased flow of water resulting from the Parkview Heights street improvements was reasonable. In reaching its conclusion, the trial court conducted a detailed and thorough analysis weighing the factors noted above. Specifically, the trial court found that Chriscon could have avoided the gravity of the harm caused by cleaning out the detention basin on a more regular basis. The trial court further noted that Chriscon's expert witness had conceded that the increased surface area of the streets in Parkview Heights was less than one percent. Lastly, the court noted that the cost for cleaning out the detention basin would not be unreasonable when divided among the ten homes in the Bilamy Creek subdivision.

{¶22} We find that the trial court's findings were supported by the record. Chriscon's expert witness, Dr. Phillip DeGroot, testified that the six-inch outlet pipe on Chriscon's detention basin contributed to the pooling of water and the resulting increased debris and sedimentation. According to Dr. DeGroot, the six-inch opening was too small for the size of the detention basin, and, with an opening that size, "you could have predicted this was going to happen even before the construction plans were approved." Dr. DeGroot further noted that the basin's problems were augmented by its placement in the streambed. With respect to cleaning the basin, Dr. DeGroot opined that Amy Christian's estimated cost of $25,000 seemed reasonable considering the work that needed to be done. But he clarified that the estimated cost of repair seemed low and that additional costs would be necessary for landscaping maintenance.

{¶23} Dr. DeGroot provided testimony regarding the street improvements in Parkview Heights. He stated that, as a result of the improvements, the impervious surfaces in the Parkview Heights subdivision had been increased by approximately .008%. In a two-year storm, this would result in an increased water run-off volume of 12.63%. But both Dr. DeGroot and Amy Christian testified that only part of the Parkview Heights subdivision is in the Bilamy Creek watershed. Thus, only a partial amount of the total increased water run-off from the street improvement project drains into Chriscon's detention basin. And when considering the overall increased water run-off into the detention basin from all off-site projects, Dr. DeGroot opined that the three upstream construction projects resulted in much higher increases in run-off water volume than that caused by the Parkview Heights project.

{¶24} Chriscon argues that the trial court failed to give due consideration to the burden that cleaning out the detention basin would place on the homeowners in the Bilamy Creek Subdivision. We cannot find that the trial court's conclusion in this respect was against the weight of the evidence. Although Dr. DeGroot had testified that an estimated cleaning cost of $25,000 seemed low and that additional costs would be incurred for landscaping, he did agree that such an estimate was reasonable.

{¶25} In summary, the trial court did not err in concluding that the gravity of harm was outweighed by the utility of the conduct, i.e. increased drainage from the Parkview Heights subdivision. With respect to the gravity of harm, we find that Chriscon has been harmed by the increased flow in surface water to its detention basin. But notably, the increased water run-off from the street improvement project in Parkview Heights is less than the increased run-off from the three upstream developments, and not all of the increased water run-off in Parkview Heights flows into Chriscon's detention basin. Further, the design of Chriscon's basin—including the six-inch pipe and placement in the streambed—contributes to its clogging with debris and sediment.

{¶26} The trial court's determination that the increased water run-off caused by the street improvement project in Parkview Heights was reasonable and that there had been no substantial interference with Chriscon's property rights was not against the manifest weight of the evidence or erroneous as a matter of law. The trial court properly granted the defendants' Civ.R. 41(B)(2) motions to dismiss.

{¶27} Chriscon's sole assignment of error is overruled. The judgment of the trial court is, accordingly, affirmed.

Judgment affirmed.

**HILDEBRANDT, P.J.,** and **SUNDERMANN, J,** concur.

Please Note:

The court has recorded its own entry on the date of the release of this opinion.